IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

VICTOR NUTTER,

       Petitioner,

v.                           Case No. 6:07-cv-00140

EVELYN SEIFERT, Warden,
Northern Correctional Facility,

       Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Respondent's Motion for Summary Judgment (docket sheet document # 9).  This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### PROCEDURAL HISTORY AND PETITIONER'S CLAIMS FOR RELIEF

#### Petitioner's criminal proceedings and direct appeal

Petitioner was initially charged by a Wirt County grand jury in a five count indictment with one count of attempted murder (Count One), one count of malicious assault (Count Two), and three counts of sexual assault in the third degree (Counts Three, Four and Five) (Case No. 99-F-2).  Counts One and Two involved an alleged victim named Joe Lott.  Counts Four and Five involved an alleged victim, who shall be known as "A.A."  The other sexual

assault charge, in Count Three, involved an alleged victim, who shall be known as "C.T." (# 9, Ex. 2). Petitioner was represented throughout all of his criminal proceedings by attorney Joseph McFarland.

The trial of Counts One and Two were severed from the sex-related charges and a jury trial on those two counts occurred in May of 1999. Petitioner was acquitted on both of those charges (attempted murder and malicious assault). Although Petitioner's federal habeas corpus petition discusses those charges, and Mr. McFarland's conduct therein, those charges are not the subject of this federal habeas corpus proceeding, and the undersigned will not address them further herein.

Subsequent to Petitioner's acquittal on the attempted murder and malicious assault charges, the prosecuting attorney moved to dismiss all of the charges of sexual misconduct against Petitioner, prior to trial, on the basis that there were material defects in the indictment. A hearing was held on the motion to dismiss the indictment on August 18, 1999. (# 9, Ex. 2). On October 13, 1999, the Circuit Court of Wirt County granted the motion and dismissed the remaining charges, without prejudice. (Id.)

During the September 1999 term of court, the prosecuting attorney again presented the sexual misconduct charges to a Wirt County grand jury. At that time, Petitioner was indicted on two counts of sexual abuse in the third degree, involving alleged

2

victim, C.T. (Counts One and Two), one count of sexual abuse in the first degree, involving alleged victim, A.A. (Count Three), and one count of sexual assault in the first degree, involving alleged victim, A.A. (Count Four) (Case No. 99-F-17).  (# 9, Ex. 1).

The second indictment identified all of these charges as felonies, when in actuality, the two charges of sexual abuse in the third degree, involving alleged victim, C.T. (Counts One and Two), were misdemeanor charges.  Because the grand jury returned the indictment more than one year and one day after the date of the alleged offenses involving C.T., Petitioner moved to dismiss those charges on the basis that they were barred by the statute of limitations for misdemeanors.  The Circuit Court granted the motion to dismiss Counts One and Two at a pre-trial hearing on November 8, 1999.  (# 9, Ex. 10 at 5).  However, the prosecution of Case No. 99-F-17 continued as to Counts Three and Four, involving alleged victim A.A.

A jury trial on Counts Three and Four took place from November 15-19, 1999.[1]  During the course of that trial, an in camera hearing was conducted on the State's request to use evidence of Petitioner's alleged sexual misconduct against C.T. as evidence of Petitioner's lustful disposition for young females, despite the

---

[1]   In order to avoid confusion for the jury, these charges were re-designated at trial as Counts One and Two during the trial. However, for the purposes of this document, the undersigned will continue to refer to these two charges as Count Three and Count Four.

fact that those charges had been dismissed as being untimely.  The State moved for the admission of such evidence under Rule 404(b) of the West Virginia Rules of Evidence.

In the in camera hearing, both alleged victims, A.A. and C.T., testified, along with a number of other witnesses.  Petitioner also testified during the in camera hearing.  Ultimately, the Circuit Court, Judge Robert Waters, determined that the evidence of alleged sexual misconduct against C.T. was admissible in Petitioner's trial on the charges involving the alleged sexual misconduct against A.A., for the limited purpose of demonstrating that Petitioner has a lustful disposition toward young females.  A limiting instruction was given to the jury concerning this evidence.  (# 9, Ex. 10 at 362-63).

On November 19, 1999, the jury returned a guilty verdict on the charge of sexual abuse in the first degree (Count Three), but was unable to reach a unanimous verdict on the charge of sexual assault in the first degree (Count Four).  Judge Waters accepted the verdict on Count Three and declared a mistrial on Count Four.  Judge Waters also delayed sentencing Petitioner on Count Three, pending a new trial on Count Four.  Petitioner's bail was revoked following his conviction on this charge.

The re-trial on Count Four was conducted on March 27 and 28, 2000, in the Circuit Court of Doddridge County, West Virginia, following a request for a change of venue, that was made jointly by

4

Petitioner's counsel and the prosecuting attorney.  Judge Waters sought and received authorization from the Supreme Court of Appeals of West Virginia (the "SCAWV"), to be designated as the presiding judge over the new trial, despite the change of venue.  At the conclusion of the trial, Petitioner was found guilty of sexual assault in the first degree.

During the first trial, Petitioner offered Defendant's Instruction # 1, stating that sexual abuse in the first degree is a lesser included offense of sexual assault in the first degree, which would have enabled the jury to find Petitioner guilty of the lesser included offense.  Over Petitioner's objection, Judge Waters refused to give the instruction, finding that the law did not recognize sexual abuse in the first degree as a lesser included offense of sexual assault in the first degree.  During the re-trial, Judge Waters changed his ruling and allowed the lesser included offense instruction to be given.

Petitioner's motions for a judgment of acquittal or a new trial on both charges were denied.

On June 12, 2000, Petitioner was sentenced to consecutive sentences of one to five years on Count Three and 15 to 35 years on Count Four.  Judge Waters denied Petitioner's request for probation or alternative sentencing.  (# 9, Ex. 5).

On February 8, 2001, Petitioner filed a Petition for Appeal in the SCAWV, assigning the following errors:

1.    In the original trial of Count 3 and Count 4 on November 15-1[9], 1999, at which time the Defendant was convicted on Count 3 and the jury hung on Count 4, the trial judge erred by failing to give the Defendant's instruction # 1.

2.    In the joint trial of Count 3 and Count 4 on November 15-19, 1999, at which time the Defendant was convicted of Count 3 and the jury hung on Count 4, the court erred by granting the State['s] Motion to admit Rule 404(b) evidence.

3.    In the joint trial of Count 3 and Count 4 on November 15-19, 1999, at which time the Defendant was convicted of Count 3 and the jury hung on Count 4, there was insufficient evidence for the jury to convict the Defendant on Count 3.

4.    In the joint trial of Count 3 and Count 4 on November 15-19, 1999, at which time the Defendant was convicted of Count 3 and the jury hung on Count 4, the court erred by admitting the testimony of Sheriff Null in regards to the out of court statement made by the Defendant, in violation of the Defendant's Right of Counsel as guaranteed by the Eight [sic; Eighth] Amendment to the Constitution of the United States of America and Article 3, Section 14 of the Constitution of West Virginia, and in violation of his rights against self incrimination under the Fifth Amendment to the Constitution of the United States of America and Article 3, Section 5 of the Constitution of the [State of] West Virginia.

5.    In the re-trial of Count 4 in February [sic; March] of 2000, the court erred by granting the State['s] Motion to admit Rule 404(b) evidence.

6.    In the re-trial of Count 4 on March 27, 28, 2000, there was insufficient evidence to convict Defendant on Count 4.

7.    The retrial of the Defendant on Count 4 violated the Defendant's rights against multiple prosecutions and double jeopardy under both Article 3, section 5 of the West Virginia Constitution and the Fifth Amendment to the Constitution of the United States of America.

8.    In [both the] trial on November 15-1[9], 1999 and
the retrial of Count Four in February [sic; March]
of 2000, the defendant was denied substantive due
process of law[,] because the State of West
Virginia used inappropriate and unlawful techniques
to secure the conviction including bringing the
indictment charges which the prosecuting attorney
knew or should have known were barred by the
statute of limitations; the Defendant was subject
to an indictment in case 99-F-2 wherein State
witnesses gave inconsistent testimony, and the
failure of the State to disclose in a timely
fashion a statement allegedly made by the
complaining children.

9.    At sentencing, the Defendant[']s rights against
compulsory incrimination under the Fifth Amendment
to the Constitution of the United States of America
and the Article III, Section 14 of the West
Virginia Constitution were violated when the court
considered the Defendant's failure to admit the
charges as evidence of unfitness for probation.

(# 9, Ex. 6).  The SCAWV refused the Petition for Appeal on March

21, 2001.  (Id.)

    Petitioner's state court habeas corpus proceedings

    On June 29, 2001, Petitioner filed a pro se Petition for a

Writ of Habeas Corpus in the Circuit Court of Wirt County (State ex

rel. Nutter v. Painter, Case No. 01-C-5).  (# 9, Ex. 7).  The pro

se petition raised the following grounds for relief:

1.    The interviews of the alleged child victims of
abuse were conducted without due care to avoid
contamination of the evidence by suggestive
encouragement of false allegation of abuse.
Petitioner alleges that he was denied due process
in violation of Amendments 5 and 14 of the U.S.
Constitution.

2.    Petitioner believes that he was denied effective
assistance of counsel, in violation of Amendment
Six of the U.S. Constitution and Article III,

7

Section 14 of the Constitution of West Virginia.

3.  The State knowingly and maliciously concealed and failed to disclose critical evidence which was exculpatory to petitioner, in violation of Amendments 5, 6, and 14 of the U.S. Constitution.

4.  In the first trial of Count 3 and Count 4, on November 15-1[9], 1999, at which time the defendant was convicted of Count 3, but jury could not reach verdict on Count 4, the trial judge erred by refusing to give Defendant's Instruction # 1.

5.  In the joint trial of Count 3 and Count 4 on November 15-1[9], 1999, at which time the defendant was convicted of Count 3 and the jury hung on Count 4, the court erred by granting the State's Motion to admit Rule 404(b) evidence.

6.  In the joint trial of Count 3 and Count 4 on November 15-1[9], 1999, at which time the defendant was convicted of Count 3 and the jury hung on Count 4, there was insufficient evidence for the jury to convict defendant on Count 3.

7.  In the trial held on November 15-1[9], 1999, the court erred by admitting the testimony of Sheriff Null regarding the out of court statement made by defendant.  The error was both because of the essential irrelevance and vagueness of the statement which had no clear bearing upon the issues before the court, as well as because the statement was obtained in violation of defendant's right to counsel as guaranteed by the Eighth Amendment of the U.S. Constitution and Article 3, Section 14 of the W. Va. Constitution, and in violation of defendant's rights against self incrimination under Amendment 5 to the U.S. Constitution and Article 3, Section 5 of the W. Va. Constitution.

8.  In the retrial of Count 4 in February [sic; March] 2000, the court erred by granting the State's Motion to admit Rule 404(b) evidence.

9.  In the retrial of Count 4, there was insufficient evidence to convict.

8

10.   The retrial of Count 4 violated defendant's rights against multiple prosecutions and double jeopardy under U.S. Constitution Amendment Five and under Article 3, Section 5 of the W. Va. Constitution.

11.   In both trials, November 1999 and February [sic; March] 2000, defendant was denied due process of law.

12.   Defendant's right against compulsory self incrimination under the U.S. and West Virginia Constitutions were violated at sentencing when the court refused to consider probation for the stated reason that defendant had refused to admit the charges against him.

(<u>Id.</u>)

Attorney Reggie Bailey was appointed to represent Petitioner in his state court habeas corpus proceedings.  On January 13, 2003, an omnibus hearing was conducted during which numerous witnesses, including Petitioner, testified.   The hearing was continued, however, in order to arrange for testimony from Mr. McFarland, who had moved out of state.[2]

Petitioner subsequently asked that Mr. Bailey be removed as his counsel, and that he be permitted to proceed <u>pro</u> <u>se</u>, with different stand-by counsel.  Several additional hearings were held concerning this issue, and Judge Waters counseled Petitioner that proceeding <u>pro</u> <u>se</u> was unadvisable; however, Judge Waters ultimately permitted Petitioner to proceed <u>pro</u> <u>se</u>, with attorney Joseph T. Santer acting as stand-by counsel.

---

[2]  No testimony was ever obtained from Mr. McFarland by either party to the habeas corpus proceeding.

After a total of five hearings, on April 21, 2006, Judge Waters issued a "Final Order and Judgment of the Court Regarding Omnibus Petition for a Writ of Habeas Corpus," in which he denied each of Petitioner's grounds for habeas corpus relief.  (# 9, Ex. 8).

### Petitioner's state habeas appeal

On November 9, 2006, Petitioner, by counsel, Mr. Santer, filed a Petition for Appeal from the denial of his state habeas corpus petition in the SCAWV.   The Petition for Appeal raised the following grounds for relief:

1.   The Trial Court erred in denying the Petitioner's motion for an instruction on Sexual Abuse in the First Degree as a lesser included offense of First Degree Sexual Assault at the trial held on November 15-1[9], 1999.

2.   In both the first and second trials, the Court erred in granting the State's motion to admit Rule 404(b) evidence pertaining to C.T.

3.   At the first trial held on November 15-1[9], 1999, there was insufficient evidence for the jury to convict the Petitioner for Sexual Abuse in the First Degree as charged in Count 3 of the indictment and at the re-trial of Count 4, there was likewise insufficient evidence to convict the Petitioner of the charge of Sexual Assault in the First Degree.

4.   The Court erred in admitting the out of court statement of the Petitioner to Sheriff Null.

5.   The retrial of the Petitioner on Count 4 violated the Petitioner's right against multiple prosecutions and double jeopardy under both Article 3, Section 5 of the West Virginia Constitution and the Fifth Amendment to the Constitution of the United States of America.

10

6.      The Prosecutor engaged in misconduct and used inappropriate and unlawful techniques to secure the conviction, violating the Petitioner's right to due process of law.

7.      At sentencing, the court improperly considered the Petitioner's refusal to admit the charges in denying probation in contravention of the United States and West Virginia constitutions.

8.      Ineffective Assistance of Counsel.

9.      The Trial Court improperly admitted the out of court statement of the victim, although the victim was present to testify personally.

10.     The Trial Court erred by allowing opinion evidence of the counselor for A.A.

11.     The Petitioner's right to effective assistance of counsel was denied at sentencing.

12.     The sentence to which the Petitioner is currently sentenced is unconstitutional because it violates the Constitutional protections from cruel and unusual punishment.

(# 9, Ex. 9).

Petitioner raised an additional two grounds for relief in an "Addendum to Petition for Appeal," which was filed pro se on January 25, 2007. The grounds for relief raised in the pro se "Addendum" are as follows:

1.      Did the Trial Judge, Robert A. Waters, ERROR in ruling that the re-trial of the Petitioner did not constitute double jeopardy and did not violate the West Virginia Constitution nor the United States Constitution, where the lower court failed to consider the implication/requirements of the West Virginia Mandatory Joinder Rule 8, prohibiting trial or re-trial, on any offence once jeopardy has attached to any offense/count required to be joined in a single prosecution.

11

      2.     The Petitioner alleges that the Trial Court Judge, Robert A. Waters, Errored in ruling that 404(b), type evidence would be admissible in the trial of Petitioner, more specifically, that allegations by C.A.T., were admissible irrespective of a running of statute of limitation, concerning previously dismissed Misdemeanor Charges against the Petitioner.

(# 9, Ex. 9, "Addendum to Petition for Appeal"). The Clerk of the SCAWV informed Petitioner that, because he was represented by counsel, only pleadings filed by his appellate attorney would be considered by the court. (Id.) By Order entered on February 15, 2007, the SCAWV refused the Petition for Appeal. (Id.)

The instant federal habeas corpus petition

Petitioner, acting pro se, filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 on March 7, 2007. Petitioner attached his Petition for Appeal from the denial of his state habeas corpus petition and the pro se "Addendum" thereto as his grounds for federal habeas corpus relief. (# 2). The undersigned will not repeat those grounds for relief herein.

On May 30, 2007, Respondent filed an Answer (# 8), a Motion Motion for Summary Judgment (# 9), a Memorandum of Law in support thereof (# 10), and exhibits in support thereof (some of the exhibits are contained in # 9, and the rest are contained in # 11). On June 12, 2007, the undersigned entered an Order, pursuant to the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his right to respond to Respondent's motions and setting deadlines for the response and a reply brief. (# 12).

12

On July 18, 2007, Petitioner filed a "Response in Opposition to Respondent's Motion for Summary Judgment" (# 13) (hereinafter "Petitioner's Response").  Respondent did not file a reply brief. This matter is ripe for determination.

### FACTUAL BACKGROUND AND TRIAL TESTIMONY

The following facts are derived from testimony taken at Petitioner's trials and other hearings:

Trial testimony

Petitioner had a prior relationship with a woman named Marcia Jan Goodnight (hereinafter "Jan Goodnight" or "Ms. Goodnight"). The two shared a daughter named Amanda.  Following her breakup with Petitioner, Ms. Goodnight had a child by another man.  That child shall herein be referred to as "A.A."

By the fall of 1997, Petitioner and Ms. Goodnight were again social acquaintances.  At that time, Ms. Goodnight needed to find a babysitter for A.A., while she was at work.  At that time, Petitioner and his other daughter from another relationship, Alicia, were living together in a trailer near Elizabeth, West Virginia.  Alicia Nutter agreed to babysit for A.A. who, at that time, was 10 years old.  The babysitting arrangement lasted from about September or October of 1997 to around April of 1998, when Petitioner and Alicia informed Ms. Goodnight that they did not want A.A. at their house any longer because she was acting up.

13

Sometime in the summer of 1998, Petitioner and Alicia moved to a different trailer near Elizabeth, West Virginia.  At that time, they were acquainted with the family of a child known herein as "C.T.," who at that time was 12 years old.  C.T. and Alicia, who was 14 or 15 years old at that time, were friends, and C.T. would frequently come to Petitioner's trailer to visit Alicia.

Although none of the witnesses could pinpoint a specific date, at both of Petitioner's trials, there was testimony concerning an evening in the late summer of 1998, when C.T. came to spend the night with Alicia.  Because the facts surrounding the incident with C.T. were offered by the State as evidence of Petitioner's lustful disposition toward young females, an in camera hearing was conducted to determine the admissibility of the evidence.  C.T. testified during the in camera hearing, after which Judge Waters determined that her testimony and related evidence would be admissible. She also testified at both of Petitioner's trials.

The testimony concerning the evening that C.T. spent at Petitioner's home was as follows:

Because Alicia had other plans in the early evening, Petitioner went to C.T.'s house to pick her up.  C.T.'s parents were home at that time.  C.T., with her mother's permission, and dressed in a bathing suit, left her home with Petitioner and stopped at a bridge over the Little Kanawha River and went swimming for a brief period of time.  They also stopped at a local pizza

14

place and got some food, before going to Petitioner's trailer. Sometime thereafter, Alicia Nutter returned home with her boyfriend, Owen Duly.

Apparently, Alicia, Owen and C.T. socialized in Alicia's room for some time, while Petitioner watched television and slept in the living room. At some point, C.T. went out to the living room to watch a movie that she had brought with her. Alicia and Owen stayed in Alicia's room. Sometime later, as Owen was leaving the trailer, he and Alicia walked into the living room and saw Petitioner asleep on the couch. C.T. was asleep on the couch next to him. Alicia awakened Petitioner, who then picked up C.T. and carried her into his bedroom, where she and Alicia were going to sleep that night.[3] Petitioner and Alicia both testified that Petitioner put C.T. in on his bed and then returned to the living room and went to sleep on the couch. Alicia testified that, after saying goodnight to her father, she went into Petitioner's bedroom and went to sleep next to C.T. Alicia testified that C.T. slept fitfully through the night.

C.T., on the other hand, testified that Petitioner came back into the bedroom, while Alicia was not there, and touched C.T.'s breasts and her vagina, while lying on the bed with her. C.T.

---

[3]   Petitioner and Alicia were in the process of moving, and Alicia did not have a bed in her bedroom. Thus, Petitioner had offered to let Alicia and C.T. sleep in his bed, while he slept on the couch in the living room.

further testified that Petitioner took her hand and placed it on his penis for a brief period.  C.T. stated that she pretended to be asleep and that Petitioner got up and left the room after that.

C.T. and A.A. were acquaintances at school.  Both testified that there was a day at school when A.A. passed a note to C.T. during their library class, asking C.T. if she had ever been "child molested."  C.T. responded that she had been sexually abused by Petitioner.  A.A. told C.T. that she, too, had been sexually abused by Petitioner.  Neither child told this to an adult at that time.

However, C.T. apparently told one of her friends about the alleged abuse by Petitioner, and that friend said something to Alicia Nutter, who then called C.T.'s mother and confronted her about what C.T. was saying.  C.T.'s mother apparently contacted the State Police, who began an investigation of C.T.'s allegations against Petitioner.

As rumors about Petitioner's conduct were circulating, Ms. Goodnight questioned A.A. about whether Petitioner had ever abused her.  A.A. denied any abuse at that time.  Monica Bailey, a friend of Ms. Goodnight, who was dating Petitioner at that time, and who had babysat for A.A. at different points in time, also asked A.A. if anyone had ever touched her in an inappropriate way.  A.A. also denied that she had ever been abused to Ms. Bailey.

A few months later, A.A. apparently watched a segment of the Oprah Winfrey show about sexual assaults, during which women talked

about their feelings of shame following being raped.  A.A. stated
that she realized that she had some of the same feelings as these
women and decided to tell her mother what happened to her.

Thus, on the evening of February 3, 1999, A.A. wrote a note to
her mother that stated that Petitioner had abused her.  She gave
the note to her mother as she was going to bed that night, and then
ran out of the bedroom.

Ms. Goodnight testified that she read the note and called A.A.
back into the room to ask her about it.  At that time, A.A. told
her that Petitioner had "sucked on her breasts and put his finger
in her panties."  A.A. did not tell her mother that Petitioner had
penetrated her vagina with his finger.

The following day, Ms. Goodnight contacted the State Police
and was put in touch with Trooper J.J. Price, a female trooper who
handled most of the detachment's sexual abuse claims.   Due to
Trooper Price's schedule, she could not meet with Ms. Goodnight and
A.A. that day, but took statements from Ms. Goodnight, A.A., and
her current babysitter, Deloris Martin, a few days later.

During A.A.'s meeting with Trooper Price, Trooper Price asked
A.A. questions and wrote down the questions and A.A.'s answers.
Trooper Price also showed A.A. a diagram of a human body and asked
A.A. to circle the areas where Petitioner allegedly touched her.

One of the questions that Trooper Price asked A.A. was "When
he touched your crotch, did he just touch you or did he try to put

17

his fingers inside you?"  A.A. responded, "He touched me on the outside and a little on the inside."  She also asked A.A., "Did it hurt at all when he touched you there?" and she responded "No."

A.A. testified at both of the trials, as well as in the in camera hearing during the first trial.  Her testimony was consistent throughout those proceedings, except as described further below.

A.A. testified that, one day, while she was at Petitioner's, and Alicia was in her room, Petitioner asked her to go out on the back porch.  Once they were outside, Petitioner lifted up her shirt and sucked on each of her breasts for a second.  After that, they went back inside without saying a word.

A.A. testified that she did not say anything to her mother at that time because she was afraid she would get in trouble.  She further testified that, a few days later, Petitioner asked her to lay down on the couch with him.  She complied.  She testified that Petitioner put his index finger under her shorts and underwear and placed it on and inside her "kitty cat," which is how she initially referred to her vagina during the in camera hearing.  During both of the trials, A.A. referred to it as her vagina.

A.A. also testified that there was another day, shortly thereafter, when Petitioner took her into his bedroom and asked her to pull her pants down, but she refused.  A.A. repeated that she did not tell her mother about any of these incidents at that time

18

because she was afraid that she would get in trouble, and she was ashamed.

During the in camera hearing, A.A. testified that Petitioner left his finger inside her vagina for "about five seconds." (# 9, Ex. 10 at 158).  During her testimony before the jury during the first trial, A.A. testified that he left it there for "about three seconds." (Id. at 278).  At the second trial, A.A. testified that his finger was inside her for "about three seconds.  I don't remember." (# 9, Ex. 11 at 169).

A.A. started seeing a counselor after she reported the alleged sexual abuse.  Her counselor also testified in Petitioner's criminal proceedings.  The counselor testified that, based upon testing she performed, she believed that A.A. functioned at a low cognitive level, but above mental retardation.

The counselor testified that A.A. told her that Petitioner put his finger inside her for "three minutes." (# 9, Ex. 10 at 289-300; # 9, Ex. 11 at 194-195).  When confronted with this fact, A.A. testified, "I can't remember if it was three seconds or three minutes." (# 9, ex. 10 at 300; # 9, Ex. 11 at 170).

A.A. was also asked about how far inside her vagina Petitioner had inserted his finger.  During the in camera hearing, A.A. testified that it was "about a centimeter." (# 9, Ex. 10 at 168). A.A. also testified at both trials that Petitioner stuck his finger inside her "about a centimeter."  However, when asked how long a

19

centimeter is, A.A. apparently told her counselor that it was "six inches" and she later testified that it was "12 inches." (# 9, Ex. 11 at 141-142).

At both of the trials, Petitioner's counsel cross-examined A.A. on these inconsistencies.  On redirect, the prosecutor had A.A. show the distance with her fingers.

Petitioner was indicted and arrested by the State Police on these charges in February of 2000.  After his arraignment, and allegedly after Petitioner had requested counsel, Petitioner was being returned to his jail cell by Sheriff Darrell Null. Petitioner allegedly told Sheriff Null that the charges concerning C.T. "were a bunch of bullshit, that he knew what it was like to sleep with a woman, and that he had not fucked her."[4]

At Petitioner's first trial on the sexual misconduct charges, Sheriff Null was permitted to testify about this statement.  The jury in the first trial asked that this testimony be read to them again during their deliberations.  Sheriff Null was not called to testify at Petitioner's second trial.

Throughout his criminal proceedings, Petitioner steadfastly denied that he inappropriately touched either A.A. or C.T.  During his case in chief at both trials, Petitioner offered testimony from

---

[4]  At this time, the indictment against Petitioner contained three counts of third degree sexual assault, stating that Petitioner had engaged in sexual intercourse with both of the victims.

witnesses, some of whom had young female children that Petitioner had been around for years, who stated that they had never seen Petitioner act inappropriately around their children, and that they did not believe that he had a lustful disposition toward young females.

Petitioner also testified at both trials.  In the first trial, Mr. McFarland asked Petitioner about specific details concerning his interactions with A.A. and C.T. on the days in question. Petitioner was also questioned about his relationship with Ms. Goodnight.  Petitioner indicated that Ms. Goodnight had made an attempt to rekindle their romance, which he rejected, and that he felt that maybe she felt spurned.  (# 9, Ex. 10 at 404-405).

During the second trial, Petitioner's counsel only asked Petitioner a few questions specifically directed at whether he had ever touched A.A.'s breasts or vagina, and whether he ever inserted his finger in her vagina.   Petitioner denied each of those allegations.  (# 9, Ex. 11 at 309-310).

Sentencing

At Petitioner's sentencing, he was represented by a different attorney, Patrick Radcliff, because Mr. McFarland was unable to be present that day.  At the sentencing hearing, Petitioner stated that he had reviewed his pre-sentence investigation report with Mr. McFarland, and Petitioner made no objections at that time to having different counsel appear on his behalf.

Prior to sentencing, Petitioner was evaluated by a court-appointed psychiatrist and psychologist to develop a rehabilitation plan and determine whether Petitioner was a good candidate for an alternative sentence of probation. The evaluators did not believe that Petitioner was a good candidate for probation, as he would not admit to the crimes of which he has been convicted. Thus, the evaluators did not prepare a rehabilitation plan for Petitioner.

At sentencing, Mr. Radcliff addressed this issue, and argued that the refusal to consider Petitioner for probation because he would not admit to the crimes of conviction violated Petitioner's constitutional rights. Judge Waters stated on the record that probation would not be denied solely on that basis, but that Petitioner's pre-sentence investigation report and criminal history was extremely negative and that he was denied probation for those reasons.

The omnibus hearings

As noted previously herein, there were five hearings on the record during Petitioner's state habeas corpus proceedings. At the hearing held on January 13, 2003 (while Mr. Bailey was still representing Petitioner), testimony was taken from 15 witnesses, including Petitioner. (# 11, Ex. 13). At the hearing held on December 9, 2005, at which Mr. Santer was present with Petitioner, the court heard testimony from five witnesses, including A.A. and C.T. (# 11, Ex. 16). At the hearing held on February 21, 2006,

22

Petitioner testified again.  (# 11, Ex. 17).

The focus of the testimony at Petitioner's omnibus hearings chiefly concerned Petitioner's allegations of ineffective assistance of counsel, and the propriety of the change of venue for the second trial.   Such testimony will be discussed herein in greater detail, as necessary.

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the United States Supreme Court held that under the "contrary to" clause, a federal habeas court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court

23

decides a case differently from the Supreme Court on a set of materially indistinguishable facts.  The Court went on to note that under the "unreasonable application" test, a federal habeas court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case.  Id. at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings.  See, e.g., Blackledge v. Allison, 431 U.S. 63, 81 (1977); Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991).  Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.)  Petitioner was given a notice, pursuant to the holding in Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising him of

24

his right and obligation to respond to Respondent's motion.   (#
16).

## ANALYSIS

The undersigned will address Petitioner's other grounds for
relief before turning to his claims of ineffective assistance of
counsel, which are numerous.

**1.    Ground One - Instructional Error.**

In Ground One of his federal petition, Petitioner asserts that
the trial court erred at his first trial by refusing to give a
proposed instruction offered by Petitioner indicating that first
degree sexual abuse is a lesser included offense of first degree
sexual assault.   Petitioner states:

> An essential argument at trial was that there was
> insufficient evidence to convince the twelve person jury
> that a sexual intrusion had occurred with A.A.  The child
> A.A. had twice told adults that no sexual contact
> occurred.  Then after much suggestion and a school yard
> conversation with her friend C.T., she told her mother
> that Petitioner had touched her, but in spite of being
> asked about specifics, she did not say that Mr. Nutter
> had penetrated her.  Only after blatant suggestion by the
> State Police Officer who questioned her did finally she
> say that Mr. Nutter had put his hand on the outside of
> her and a little on the inside.  Later in therapy she
> told her therapist that he had put his finger in her "a
> centimeter," for a period of three minutes.  At trial,
> A.A. testified that a centimeter was twelve inches.  It
> is obvious from the verdict at the trial in November of
> 1999 that the jury believed that a sexual contact had
> occurred in regards to Count 3 as they convicted Mr.
> Nutter of that charge.  However, it is equally obvious
> that the jury was undecided as to whether an actual
> sexual intrusion had occurred as to Count 4, as they were
> "hung" and unable to agree on this count.

This Court can and should therefore conclude that if
the Judge had given the correct instruction in November
of 1999, and advised the jury that they could find Mr.
Nutter guilty of the lesser included offense of Sexual
Abuse in the First Degree, then the November jury would
have convicted him of Sexual Abuse in the First Degree on
Count 4.  Mr. Nutter would not have again been subjected
to jeopardy on the charge of Sexual Assault in the First
Degree and been convicted by a subsequent jury of the
much greater charge of Sexual Assault in the First
Degree.

(# 2, Appendix B (hereinafter "Appx. B") at 8-9).

Respondent's Memorandum of Law in support of his Motion for
Summary Judgment challenges this claim on several grounds.
Respondent asserts that Petitioner's claim is not cognizable in a
federal habeas corpus proceeding because he has not alleged the
denial of a federal constitutional right; rather, Petitioner's
claim is merely a state law issue concerning jury instructions.
Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir.
1960)("[I]nstructions to the jury in state trials are matters of
state law and procedure not involving federal constitutional
issues").  (# 10 at 14).  Respondent further asserts that "the
omission of a required jury instruction, as alleged here, is 'less
likely to be prejudicial than a misstatement of the law.'
Henderson v. Kibbe, 431 U.S. 145, 155 (1977)."  (Id.)

Respondent further contends that "Petitioner cannot challenge
the instruction given on a trial that did not result in the
conviction being challenged herein.  Only the instruction given at
the trial that resulted in the conviction (on Count Four) can be

26

challenged." (Id.)  As noted by Respondent, the lesser included offense instruction was given by the trial court at the second trial. (Id.; # 9, Ex, 11 at 327-329).

The State habeas court found as follows on this issue:

In the March, 2000 trial, the Court after further research determined that it was proper to give a possible lesser-included verdict of guilty of Sexual Abuse in the First Degree as well as Guilty of Sexual Assault in the First Degree.  However, in the March 2000 re-trial, the jury, even with the choice of the lesser-included offense, found the Petitioner guilty of the greater charge of Sexual Assault in the First Degree.  Therefore, Petitioner received the benefit of the jury being given the choice to return a verdict to a lesser-included offense.  The Petitioner's contention that the jury in the November 1999 trial would have returned a verdict to a lesser-included offense on Count Four is pure speculation.

(# 9, Ex. 8 at 3-4).

It is well-settled that "the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)).  Thus, claims regarding jury instructions do not state a federal claim, absent a showing that an instruction "by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141 (1973).

In the second trial, Petitioner was convicted of sexual assault in the first degree, notwithstanding the court's instruction to the jury that they could find him guilty of the lesser-included offense of sexual abuse in the first degree.

27

Petitioner's contention that the jury in the first trial would have found him guilty of the lesser-included offense, if they had been given that instruction at that time, is absolutely speculative.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated a violation of his right to due process of law by the failure of the state court to give a lesser-included offense instruction at his first trial. The undersigned further proposes that Ground One of Petitioner's federal petition does not otherwise state a cognizable claim. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly-established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

### 2. Ground Two - Admission of Rule 404(b) evidence.

In Ground Two of his federal petition, Petitioner asserts that the trial court erred in both of his trials by granting the State's motion to admit evidence under Rule 404(b) of the West Virginia Rules of Evidence concerning Petitioner's alleged sexual misconduct against C.T. Specifically, Petitioner states:

> In State v. McGinnis, 193 W. Va. 147, 455 S.E.2d 516 (1994), the Court explained in considerable detail, and with great clarity, when, how and why evidence of other crimes, wrongs or acts are admissible in a criminal case. When the State proposes to present evidence of prior bad

acts the trial court is required to utilize the four-part analysis set forth in Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L.Ed.2d 771 (1998) to determine admissibility.  The evidence must be probative of a material issue other than character, must be relevant, the probative value of such evidence must outweigh risks that its admission will create substantial danger of unfair prejudice, and the jury must be instructed that evidence of uncharged bad conduct is not to be considered as proof of guilt on the present charge but may be considered in deciding whether a given issue or element relevant to the present charge had been proven.   In McGinnis the Court stated that the admissibility of 404(b) evidence would be determined by the trial court during an in camera hearing as stated in State v. Dolin, 176 W. Va. 688, 347 S.E.2d 208 (1986).

* * *

     The Trial Court must be satisfied by a preponderance of the evidence that the acts of conduct occurred and that the defendant committed the acts in order to admit other crimes evidence.   The Trial Court must determine the relevancy of the other crimes evidence and balance it against prejudice, confusion, and waste of time.   A limiting instruction should be given in connection with said evidence, both at the time the evidence is presented and during closing instructions.

     In this case Mr. Nutter was greatly prejudiced by the admission, over objection, of the 404(b) evidence relative to C.T.  C.T.'s testimony at the November 15-1[9], 1999 trial involved an incident which allegedly occurred sometime in September of 1998.   The testimony was inherently incredible. * * * Here the Judge ruled not only that the abuse did in fact occur, but went so far as to declare that the Defendant was a sexual predator. (Transcript, Trial November 15-1[9], p. 263).   This statement demonstrates that the Judge was not fair and impartial in regards to his consideration of this 404(b) evidence.   The evidence upon which the Judge made this ruling was quite weak at best.

* * *

     In the re-trial of Count 4 in February [sic; March] of 2000, the Court again erred by granting the State's motion to admit the Rule 404(b) evidence.   At the retrial

29

> of Count 4, the Court, in an effort to save time, and to
> avoid the supposed risk of trauma to the child witnesses,
> referred to and adopted the previous in camera 404(b)
> hearings and the rulings when, during the second trial,
> the Petitioner objected to the admission of C.T.'s
> testimony. (Transcript, trial March 27, 28, 2000, p.
> 198-200.) Therefore, the same in-camera evidence was
> considered for both trials.

(# 2, Appx. B at 9-12). Petitioner also argues his belief that

the evidence presented during the in camera hearing was

insufficient to find by a preponderance of the evidence that the

alleged abuse of C.T. actually occurred, and that the admission of

such evidence was unduly prejudicial because there was no

corroborating physical evidence, and the admission of the evidence

enabled the prosecutor to vouch for the victim's credibility,

rather than allowing the jury to decide whether the alleged victim

was credible. (Id.) Petitioner also raised a similar claim in

Ground Two of his "Addendum to Petition for Appeal." (# 2, Appx.

B, "Addendum to Petition for Appeal" at 11-14).

Respondent argues that "the violation of a state rule of

evidence is not a denial of due process" and that "something worse

than a garden-variety violation of the standard of 404(b) must be

shown to cross the constitutional threshold." Koo v. McBride, 124

F.3d 869, 874-75 (7th Cir. 1997)(quoting Watkins v. Meloy, 95 F.3d

4, 6-7 (7th Cir. 1996). (# 10 at 15). Respondent again emphasizes

that alleged violations of state court rules alone do not state

claims cognizable in federal habeas corpus. Estelle v. McGuire,

502 U.S. at 72. (Id.)

Respondent then discusses the SCAWV's decision in <u>State v. Edward Charles L.</u>, which held:

> Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. To the extent that this conflicts with our decision in <u>State v. Dolin</u>, 176 W. Va. 688, 347 S.E.2d 208 (1986), it is overruled.

Syl. Pt. 2, <u>State v. Edward Charles L.</u>, 398 S.E.2d 123 (W. Va. 1990). Respondent states:

> Pursuant to West Virginia Rule of Evidence 404(b) the challenged evidence was admissible as proof of the Petitioner's lustful disposition towards little girls. The evidence was damaging, as intended. However, Petitioner fails to demonstrate that he was unfairly prejudiced by inadmissible evidence as required to raise a due process claim. <u>See</u> <u>United States v. Pitrone</u>, 115 F.3d 1, 8 (1st Cir. 1997)("Virtually all evidence is prejudicial – if the truth be told, that is almost always why the proponent seeks to introduce it – but it is only unfair prejudice against which the law protects."); <u>United States v. Cassell</u>, 292 F.3d 788, 795 (C.A.D.C. 2002)("Virtually all evidence is prejudicial or it isn't material.")

(<u>Id.</u> at 16).

The state habeas court found as follows on this issue:

> The Court properly granted the State's Motion to admit 404(b) evidence as to the second alleged victim, [C.T.] The Court fully complied with <u>State v. McGinnis</u>, 193 W. Va. 147, 455 S.E.2d 516. The Court conducted a proper in camera hearing, applied the law, and gave a proper cautionary instruction to the jury. The Rule 404(b) hearing was extensive with four witnesses called by the State and six called by the Petitioner.

(# 9, Ex. 8 at 4).

31

The trial court's ruling on the admission of evidence under the state evidentiary rule is a question of state law that is binding on this federal court.  Thus, the question before this court is simply whether the admission of such evidence was fundamentally unfair or a miscarriage of justice.

The undersigned has reviewed the testimony from the in camera hearing, as well as the testimony of the same witnesses in front of the jury at both of Petitioner's trials.  Judge Waters properly gave a cautionary instruction both immediately after C.T.'s testimony and again during the jury instructions.  (# 9, Ex. 10 at 362-363; # 9, Ex. 11 at 245-246; # 9, Ex. 11 at 330).

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the admission of evidence concerning other bad acts under Rule 404(b) of the West Virginia Rules of Evidence was fundamentally unfair or a miscarriage of justice and, thus, Petitioner has not demonstrated a violation of his right to due process cognizable in federal habeas corpus.  The undersigned further proposes that the presiding District Judge **FIND** that the state habeas courts' rulings denying of habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly-established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

3.   **Ground Three - Sufficiency of Evidence.**

In Ground Three of his federal habeas petition, Petitioner asserts that there was insufficient evidence to find that he was guilty beyond a reasonable doubt on both counts of conviction. (# 2, Appx. B at 12-14). Petitioner states in pertinent part:

> The allegations by A.A. were unsupported by any corroborating evidence. A.A. was uncertain as to the date, disclosed the alleged abuse at a late date, and only did so after much suggestion. On two occasions prior to her "disclosure" adults who were seeking to protect either her or other children, specifically asked A.A. whether or not she had been abused. The mother of A.A. focused her inquiry directly on Mr. Nutter and Monica Bailey aimed her inquiry of A.A. at any person. These inquiries were both made after the dates the alleged abuse had occurred, and A.A. on both occasions denied that she was abused. Keep in mind the relationship between A.A.'s mother and the Petitioner, who together have a dysfunctional history of parenting one of A.A.'s half sisters, the animosity that such situations present, and the likelihood that such animosity can permeate through the family to A.A.
>
> In considering this issue, it is paramount to recall the suggestive questioning of A.A. by her mother and Monica Bailey, the suggestion of the television media via the Oprah Winfrey show, the suggestion of her friend C.T. at school, and the general atmosphere of hysteria about sexual abuse in which we live everyday. It is incredibly simple for a story such as this to become planted and grow in a child's mind when she is being frequently asked about it. Then add to this mix the fact that A.A. was upset and angry with Mr. Nutter for, as she said, treating her unfairly, getting her in trouble, and being mean to her. A.A.'s story grew from the initial time she told her mother, through the police interview, her counseling, and the trial. In addition, the accusation was not made for two years, there was no corroborating evidence and the accusations are steadfastly denied by Mr. Nutter.

Furthermore in regard to Count 4 the evidence offered against the Defendant was the Defendant penetrated with his finger.***

In this case, there is no evidence that A.A. was penetrated by an object.  There is no evidence that A.A. was penetrated by the sex organ or mouth of the defendant.  The evidence offered was that the Defendant touched A.A. with his hands, not an object.  The evidence offered on Count 4 may support a conviction under First Degree Sexual Abuse [citation omitted] as a sexual contact, but it does not support a conviction of First Degree Sexual Assault [citation omitted].

(Id.)

As noted by Respondent, in reviewing the sufficiency of the evidence to support a state criminal conviction on a due process challenge in a federal habeas proceeding, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307 (1979). (# 10 at 17).  The court does not re-try the evidence or re-determine the credibility of the witnesses.  See Wright v. West, 505 U.S. 277, 296 (1992); Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  (Id.)

Respondent argues:

In sexual assault cases, it is well established that victim testimony alone is sufficient to sustain a conviction. See, e.g., Loblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000); United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001)(holding that "a victim's testimony alone is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt" in a sexual contact case); cf. Simmons v. Pryor, 26 F.3d 650, 654 (7th Cir. 1993)(holding that "visible evidence of bodily harm is not necessary to obtain a conviction" for

battery).

A.A. testified that the Petitioner "put his finger in my crotch." (Resp't Ex. 11 at 136.) A.A. further testified that the Petitioner put his hand "under my underwear" and up to her "crotch" (id. at 139) and touched her on the "[i]nside and out." (Id. at 140.)

The testimony of A.A. was sufficient to demonstrate intrusion as required for a conviction of Sexual Assault in the First Degree pursuant to West Virginia Code § 61-8B-3 [footnote omitted]. There is no evidence that the testimony of A.A. was inherently incredible. Therefore, the Petitioner's conviction rested on a matter of witness credibility, which is solely within the province of the jury as a trier of fact. "The jury is free to believe the uncorroborated testimony of a single witness and this will be sufficient evidence." See, e.g., United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997). "Section 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall, 459 U.S. at 434.

(# 10 at 17-18). Respondent further argues that Petitioner has also only raised issues of witness credibility concerning his conviction at his first trial on one count of sexual abuse in the first degree. Respondent states:

Absent a showing that the testimony of the victim was inherently incredible, the testimony of the victim alone is sufficient to support the conviction. Wilson, supra. In this instance the victim, A.A. testified that the Petitioner pulled up her shirt and put his mouth on her breasts. (Resp't Ex. 11 at 130.) The testimony of A.A. was sufficient to satisfy the elements of a violation of West Virginia Code 61-8B-7, Sexual Abuse in the First Degree [footnote omitted].

(Id. at 18-19).

In Petitioner's state habeas corpus petition, he raised the issue of sufficiency of evidence in two different claims (Ground

35

Three and Ground Six).  The state habeas court found that there was sufficient evidence to convict Petitioner on both sexual abuse in the first degree and sexual assault in the first degree.  (# 9, Ex. 8 at 4).

Based upon an exhaustive review of the evidence presented at both trials in the light most favorable to Respondent, the undersigned proposes that the presiding District Judge **FIND** that there was sufficient evidence presented to allow any rational trier of fact to find that Petitioner committed the essential elements of first degree sexual abuse and first degree sexual assault beyond a reasonable doubt.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the state habeas courts' denial of habeas corpus relief on this claim are neither contrary to, nor an unreasonable application of, clearly-established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

### 4.   Ground Four - Admission of Petitioner's out-of-court statement.

In Ground Four of his federal petition, Petitioner alleges that the trial court erred at his first trial by admitting Sheriff Darrell Null's testimony concerning Petitioner's out-of-court denial that he had sexual intercourse with C.T.  (# 2, Appx. B at 14-15).  Petitioner asserts that the admission of this evidence violated his Fifth and Sixth Amendment rights.  (Id. at 15).

36

Petitioner states:

> Sheriff Null testified to the effect that Mr. Nutter
> told him, while in custody and after he had been
> arraigned and requested appointment of counsel, that the
> charges were a "bunch of bullshit," and that "he knew
> what it was like to be with a woman and that he had not
> fucked her."  There was no recording of the statement.
> The statement was found by the Court to be a spontaneous
> statement, made while in custody, and after the
> Petitioner had requested counsel (Transcript, trial
> November 15-18, 1999, p. 418-420).   However, the
> Petitioner had not yet been informed that he had a right
> to remain silent, nor that anything he said might be used
> against him in a court of law as required by <u>State v.
> Fortner</u>, 150 W. Va. 571, 148 S.E.2d 669 (1966).

> The prejudicial nature of this statement cannot be
> doubted.  The jury took great interest in this statement,
> which the state argued was an admission of guilt, as
> evidenced by their request to hear the testimony of
> Sheriff Null re-read during their deliberations
> (Transcript, trial November 15-18, 1999, p. 493).   So
> they obviously considered this to be important.  Given
> this extra interest its clear this evidence was unduly
> prejudicial to the Petitioner.

(<u>Id.</u>)

Respondent argues that Petitioner's statement was spontaneous,

unsolicited, and made outside of custodial interrogation.  (# 10 at

19).  Respondent further argues that admission of the statement was

not unduly prejudicial, stating, "the statements of the challenged

witness were not included in the Second Trial and the Petitioner

was still convicted of First Degree Sexual Assault even with an

instruction on a lesser included offense.  This result undermines

the Petitioner's claim."  (<u>Id.</u> at 20).

Respondent further emphasizes that, "in order to prevail, the

Petitioner would have to successfully demonstrate that the

37

admission of the evidence impugned the fundamental fairness of the trial or infringed upon specific constitutional protections." [citing Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960)]. Respondent asserts that Petitioner has not established the violation of a federal constitutional right. (Id.)

At Petitioner's first trial, the trial court heard the following testimony from Sheriff Null in camera:

Q.   How did his comments to you start?

A.   He just started talking about a bunch of -- the case was a bunch of bull, a bunch of nonsense.

Q.   Which case is that?

A.   He said the case with [C.T.] was a bunch of bullshit.

Q.   Was he charged with both cases at the time?

A.   Yes, sir.  If I remember correct, he had been indicted on both.

Q.   He'd have been indicted on both counts?

A.   Yes, sir.

Q.   And what did he tell you specifically?

A.   That with [C.T.], it was a bunch of bullshit, and I knew how it was after sleeping with a woman--

Q.   You can use the word he used if it's more comfortable.

A.   Well, he -- I knew how it was after sleeping with a woman, but he hadn't fucked her, as he said, and I took it to mean he'd done some -- either touched her or done something inappropriately.

Q.   Why did you take it that way?

38

A.   Well, that's what he implied to me as he was
     speaking to me.

(# 9, Ex. 10 at 415-416).

The trial court ascertained that the statement was made after

Petitioner was in custody, but that he was not being interrogated.

The court ruled as follows:

> THE COURT:   Clearly the Defendant was in custody;
> however, he was not being interrogated.  He had asked for
> counsel.   I guess the request for counsel was being
> processed at that time.  He probably would have filled
> out a financial affidavit.  Obviously there can be no
> custodial interrogation after he's asked for counsel, but
> if he initiates a statement that's voluntary, and clearly
> from the evidence, it's a voluntary statement.
>
> So it is the opinion of the Court that the
> statement, not being in response to any questioning by
> the sheriff and being completely voluntary, and being
> initiated on the part of the Defendant, it would be an
> admissible statement.  So you may proceed.

(Id. at 419).   The court did not allow Sheriff Null to give his

opinion that Petitioner was admitting that he did something

inappropriate to C.T.   (Id. at 416).

In front of the jury, Sheriff Null testified as follows:

Q.   Sheriff, just what exactly did Mr. Nutter say to
     you while you were taking him over out of the
     courthouse?

A.   He stated to me that the case with [C.T.] was a
     bunch of bullshit, that he couldn't help if he got
     -- if she had got in bed with him, and I knew how
     it was after sleeping with a woman, but he had not
     actually - his word - he had not actually fucked
     her.

(Id. at 419-420).

39

During the cross-examination of Sheriff Null, Petitioner's counsel attempted to clarify for the jury that Petitioner's statement had been in response to the fact that Petitioner was initially indicted for allegedly having "sexual intercourse" with C.T., and that the first indictment was erroneous and had been dismissed.  (Id. at 421-422).  Judge Waters then took judicial notice of the dismissal of the first indictment as follows:

> THE COURT: I think it would be fair to take judicial notice of those charges since they've been brought up. The Defendant was indicted by the March grand jury for sexual intercourse with [C.T.] That charge was later dismissed on the motion of the State, because I believe it's fair to say the State represented that that was defective, that it did not represent the true charge regarding the incident with [C.T.]
>
> The Defendant was subsequently indicted on misdemeanor charges regarding [C.T.]; however, those were likewise dismissed because the indictment was brought more than a year after the alleged occurrence in August of 1998.  There was an attempt to re-indict him on misdemeanors in September of 1999, and that failed because more than a year had passed since the alleged incident.

(Id. at 423).

The state habeas court found as follows on this issue:

> The Petitioner's spontaneous exited utterance made to Sheriff Null was admissible into evidence under the West Virginia Rules of Evidence.  The Court held an in camera hearing regarding the statement.  The Petitioner's counsel acknowledged that the statement had been disclosed to him by the State.  (Transcript, November 1999 trial, p. 414).

(# 9, Ex. 8 at 4).

40

Based upon a review of the evidence, the undersigned proposes
that the presiding District Judge **FIND** that, despite the fact that
Petitioner was in custody, his statement to Sheriff Null was not
made in response to interrogation and thus, was voluntary and
admissible.  Volunteered statements are not protected by the Fifth
Amendment.  <u>Estelle v. Smith</u>, 451 U.S. 454 (1981); <u>Giarrantano v.
Procunier</u>, 891 F.2d 483 (4th Cir. 1989).

Similarly, although Petitioner had apparently requested that
counsel be appointed to represent him, and no counsel was present
at the time he made this statement, he was not being interrogated
at that time.  The Sixth Amendment provides that "[i]n all criminal
prosecutions, the accused shall enjoy the right ... to have the
assistance of counsel for his defense." <u>Estelle</u>, 452 U.S. at 469
(citing <u>Powell v. Alabama</u>, 287 U.S. 45, 57 (1932)).  The <u>Estelle</u>
Court further stated:

> Since then, we have held that the right to counsel
> granted by the Sixth Amendment means that a person is
> entitled to the help of a lawyer "at or after the time
> that adversary judicial proceedings have been initiated
> against him ... whether by way of formal charge,
> preliminary hearing, indictment, information, or
> arraignment." <u>Kirby v. Illinois</u>, 406 U.S. 682, 688-689,
> 92 S. Ct. 1877, 1882, 32 L. Ed.2d 411 (1972) (plurality
> opinion); <u>Moore v. Illinois</u>, 434 U.S. 220, 226-229, 98 S.
> Ct. 458, 463-465, 54 L. Ed.2d 424 (1977).  And in <u>United
> States v. Wade</u>, 388 U.S. [218], at 226-227, 87 S. Ct.
> [1926], at 1932 the Court explained:
>
>> "It is central to [the Sixth Amendment]
>> principle that in addition to counsel's
>> presence at trial, the accused is guaranteed
>> that he need not stand alone against the State
>> at any stage of the prosecution, formal or

41

> informal, in court or out, where counsel's
> absence might derogate from the accused's
> right to a fair trial." (Footnote omitted.)

451 U.S. at 469-470.

However, after arraignment, and a request for counsel has been made, only *police-initiated* questioning in absence of counsel violates the Sixth Amendment. <u>Michigan v. Jackson</u>, 475 U.S. 625, 632 (1986); <u>Murphy v. Holland</u>, 845 F.2d 83 (4th Cir. 1988). Petitioner's statement was volunteered; it was not made during interrogation.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that the admission, at the first trial, of Petitioner's statement to Sheriff Null, did not violate either Petitioner's right against self-incrimination under the Fifth Amendment, or his right to counsel under the Sixth Amendment.

The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on this claim.

**5.  Ground Five - Double Jeopardy.**

In Ground Five of his federal petition, Petitioner claims that his re-trial on Count Four (sexual assault in the first degree)

42

violated his rights against multiple prosecutions under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amend. V.   The petition states in pertinent part:

> The Court failed to give the Petitioner's Instruction Number One at the first trial on November 15-1[9], 1999 (Assignment of Error # 1), essentially depriving the Petitioner of the right to have that jury determine whether he was guilty of First Degree Sexual Abuse as a lesser included offense of First Degree Sexual Assault. At the re-trial of Count 4, the Judge changed his ruling from that made at the earlier trial, and allowed a lesser included offense instruction.  The Petitioner immediately made a motion to dismiss on Double Jeopardy grounds (Transcript March 27, 28, 2000, p. 312) which the court denied.
>
> From the point the jury in the first trial was empanelled [sic; impaneled] and sworn, the Petitioner had a constitutional right, subject to limited exceptions, to have his case decided by that particular jury. U.S. v. Quiala, 19 F.3d 569 (11th Cir. 1994).  The practical effect of not giving the first jury the proper instruction is to compel the Petitioner to have two separate trials against his will in violation of the Double Jeopardy clauses of the State of West Virginia and the 5th Amendment to the Constitution of the United States of America.  The particular facts of this case create a compelling fact situation because the first jury in November 1999 was likely to convict on Sexual Abuse and did so in regards to Count 3.  Had they had the same charge instructed to them in regards to Count 4, they would undoubtedly have convicted him of Sexual Abuse in the First Degree on that count as well.  He would not have then been subjected to Double Jeopardy for the more serious charge of Sexual Assault in the First Degree.  He would in such case have been exposed to 1-5 years sentenced and not 1 to 5 and a 15 to 35 year sentence.
>
> In addition, the Court improperly accepted a partial verdict in the first trial over defendant's objection. Defense counsel had clearly moved for a mistrial on both

counts, however, the Court ignored the motion, received the verdict as to Count 1 [Count Three] and ordered a mistrial as to Count 2 [Count Four], all in violation of the defendant's rights.  (Transcript, November 15-1[9] 1999 Trial, p. 519 and 521).

(# 2, Appx. B at 16).  Petitioner raised a similar claim in Ground One of his "Addendum to Petition for Appeal."  (Id., "Addendum to Petition for Appeal" at 4-10).

Respondent asserts that "[i]t is well known that a hung jury does not foreclose retrial on the unresolved counts.  Richardson v. United States, 468 U.S. 317, 325-26 (1984)." (# 10 at 21).  The Richardson Court stated:

> [W]e have constantly adhered to the rule that a retrial following a "hung jury" does not violate the Double Jeopardy Clause.  Logan v. United States, 144 U.S. 263, 297-298, 12 S. Ct. 617, 627-628, 36 L. Ed. 429 (1892).  Explaining our reasons for this conclusion in Arizona v. Washington, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed.2d 717 (1978), we said:
>
> > "[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial.  This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws."  Id. at 509, 98 S. Ct. at 832.

468 U.S. at 324.  On the basis of this authority, Respondent asserts that no violation of double jeopardy occurred, and whether or not the trial court gave the lesser included offense instruction in the first trial is irrelevant.  (# 10 at 21).

Concerning this claim, the state habeas court found:

> The re-trial of the Petitioner on Count Four, the count on which the jury was unable to reach a verdict at the November, 1999 trial, did not constitute double jeopardy and did not violate the West Virginia Constitution nor the United States Constitution.

(# 9, Ex. 8 at 4).

As noted in the authority cited by Respondent, it is clearly established that a re-trial on a charge following a mistrial concerning that charge based upon a hung jury does not implicate double jeopardy. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Respondent is entitled to judgment as a matter of law on this claim.

## 6. Ground Six - Prosecutorial Misconduct.

In Ground Six of his federal petition, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct. Petitioner has various claims of alleged misconduct. The undersigned will discuss each type of claim in turn.

### a. Claims related to grand jury process and indictments.

Petitioner has made several claims of alleged prosecutorial misconduct related to the grand jury and indictment process. (# 2,

Appx. B at 17-21).  Petitioner claims that he was subject to an indictment in Case No. 99-F-2 (the first indictment that was subsequently dismissed) "wherein State witnesses gave inconsistent testimony" and that "the State used misleading and otherwise inadmissible evidence to secure improper grand jury indictments." (Id. at 17).  Concerning these claims, Petitioner discusses details concerning the first indictment, which was dismissed, and specifically discusses the charges of attempted murder and malicious assault, of which he was acquitted, and which are not the subject of the instant habeas corpus petition.  (Id. at 19-20). Accordingly, the undersigned will not address those issues herein.

Petitioner states that the dismissed charges that were re-presented to the grand jury "serve to demonstrate obvious bias of the State against the Petitioner."  (Id. at 19).  Petitioner further asserts that exculpatory evidence was omitted at the grand jury proceedings, and that "the State offered evidence concerning an alleged inculpatory statement made by the alleged victim which was not evidenced at trial.  Furthermore, the indictment was seriously flawed."  (Id. at 19-20).  Finally, Petitioner alleges that the prosecutor brought the second indictment when he knew or should have known that it contained misdemeanor charges that were barred by the statute of limitations, and also improperly listed those charges as felonies in the indictment.  (Id. at 17, 20). Petitioner cites no federal authority in support of his claims that

46

these actions violated his right to due process of law.

In his Memorandum of Law in support of his Motion for Summary Judgment, Respondent asserts:

> There is no federal right of a state prisoner to be indicted by a grand jury. The Supreme Court has concluded that neither the Grand Jury Clause of the Fifth Amendment nor the Due Process Clause of the Fourteenth Amendment requires the state to afford the accused a right to grand jury review before trial. <u>Hurtado v. California</u>, 110 U.S. 516, 534-35 (1884). Likewise, any defect in the grand jury proceedings are rendered harmless following a conviction by jury. <u>See</u> <u>United States v. Mechanik</u>, 475 U.S. 66, 73 (1986)("the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation.") Unless the alleged errors deprived a criminal defendant of the fundamental concepts of a fair trial, due process is not violated. <u>United States v. Morsley</u>, 64 F.3d at 913. Also, the charges that were barred by the statute of limitations were dismissed and the Petitioner was never tried on those charges.
>
> The Petitioner has not demonstrated how the alleged flaws in the indictment or the grand jury proceedings deprived him of a fair trial. So long as the indictment was sufficient to allow the Petitioner to prepare a defense, and protected the accused against double jeopardy[,] no violations of due process occurred. <u>See</u> <u>Russell v. United States</u>, 369 U.S. 749, 763-64 (1962).

(# 10 at 28-29).

The state habeas court found that "[t]here is no evidence that the indictments were obtained by inconsistent or false testimony." (# 9, Ex. 8 at 5). The court further found that:

> The Prosecuting Attorney dismissed the remaining counts of indictment 99-F-2 due to faulty drafting of those counts. The State was not barred from bringing a new indictment in case 99-F-17. Two counts in case 99-F-17 were misdemeanors and were dismissed under the Statute of Limitations. The Petitioner was given his proper remedy. The Petitioner's rights were not violated as to the

remaining counts of the indictment.

(Id.)

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated a violation of his right to due process or any other federal constitutional right based upon the allegations contained in his federal petition about the grand jury and indictment process.  The undersigned further proposes that the presiding District Judge **FIND** that the state courts' denial of habeas corpus relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

  b. Failure to disclose evidence.

Petitioner further asserts that "[t]he State withheld three key pieces of evidence." (# 2, Appx. B at 17).  Specifically, the petition alleges in pertinent part:

> In this case, Trooper Price took a second statement from A.A. which alleged that the incidents took place around Halloween of 1997.  This was particularly important because previously A.A. was not able to give such a specific timeline.  Previously she had given a six month window in which the allegations could have occurred.  This failure to disclose further shows the bias the State demonstrated throughout the case.  Both Trooper Price and the prosecuting attorney had numerous opportunities to provide this information but failed to disclose it. (Transcript, November 15-18, 1999 Trial , pp 117-121; Transcript March 27, 28 2000 Trial pp 76-79).
>
> Secondly, the State failed to disclose its intended use of the alleged statement given by the Petitioner to Sheriff Null.  As discussed above, the prejudicial effect

48

on failing to disclose this statement is obvious from the jury's request to have his testimony read back to them during their deliberations.

* * *

The State also failed to disclose to the Petitioner the fact that an alleged victim, C.T., had previously made very similar accusations against a Mike Forguer[5] (mistakenly referred to as Fordyce); that such accusations were investigated; that she was examined by a physician and a psychologist relative to the same; and that no charges were ever filed against Mike Fordyce. (Transcript Writ Hearing December 9, 2005, pp 39-40; pp 93-97) Disclosure of this information was necessitated on two levels:

a) Prior to the charges being dismissed the said C.T. was a named victim in the Indictment returned against the Petitioner. In such case this information could be used for impeachment and could have led to exculpatory evidence; and

b) Even after the dismissal of all charges involving C.T. the State intended and in fact did utilize C.T. as a witness against the Petitioner in its presentation of 404(b) evidence. In this situation this information could and should have been used to challenge the witness' credibility and ultimately the admissibility of the 404(b) evidence against the Petitioner.

(Id. at 17-18).

Respondent's Memorandum of Law asserts:

In his argument, the Petitioner makes several claims regarding information that he says should have been disclosed to the defense, and cites only state law in

_____

[5] Petitioner refers to this individual as "Michael Forguer." In other places in the state court records, and in Respondent's Memorandum of Law, this individual is referred to as "Michael Forquer." Furthermore, at some point during the state court proceedings, this individual was improperly referred to as "Michael Fordyce." The undersigned is uncertain of the correct spelling of this individual's name.

support of this ground.  However, nowhere does the Petitioner demonstrate that the subject evidence was intentionally withheld by the prosecution.  The Petitioner further fails to argue how any of the challenged evidence would have favorably [a]ffected the outcome of the proceedings against him.

Under Brady v. Maryland, 373 U.S. 83, 87 (1963), a state violates a defendant's due process rights when it fails to disclose to the defendant prior to trial, "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  The duty to disclose extends to information in the possession of law enforcement agencies investigating the offense.  Kyles v. Whitley, 514 U.S. 419, 437-38 (1995); see also Strickler v. Greene, 527 U.S. 263, 280-81 (1999).  "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler, 527 U.S. at 281-82; see also Spicer v. Roxbury Correctional Institute, 194 F.3d 547, 555 (4th Cir. 1999).

(# 10 at 22-23).

Concerning Petitioner's claim that the State did not disclose a second statement taken from A.A., Respondent states:

The Petitioner claims that a state trooper investigating the case took a second statement from A.A., the victim, in which she offered a time frame more specific than in her original statement.  The Petitioner goes no further.  Not only does the Petitioner fail to demonstrate that the State intentionally withheld information it knew to be favorable to the defense, but he has not shown how disclosure of this evidence would have materially affected the outcome of the proceedings.  Time is not material in a sexual assault prosecution in West Virginia.  See State v. Miller, 466 S.E.2d 507, 514 (W. Va. 1995)("Time is not an element of the crime of sexual assault[.]")

> Evidence is material for purposes of a denial of due process if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). The Petitioner has made no such showing regarding the additional statements of A.A.

(<u>Id.</u> at 23).

Concerning the alleged failure to disclose the State's intended use of Petitioner's statement to Sheriff Null, Respondent asserts that Sheriff Null was called as a rebuttal witness, and that, during the in camera hearing to determine whether the statement was admissible, Petitioner's counsel admitted that the statement was disclosed to him "during the pendency of the other indictment in the case." (<u>Id.</u> at 23-24). Thus, Petitioner cannot credibly allege a <u>Brady</u> violation concerning this evidence.

Finally, concerning the State's failure to disclose evidence concerning C.T.'s allegations of sexual abuse by another person, Respondent asserts as follows:

> The Petitioner further claims the prosecution withheld evidence that state witness C.T. had filed a false report of sexual abuse by another individual, Michael Forquer, prior to bringing charges of sexual abuse against the Petitioner. The Petitioner argues that the evidence of C.T.'s prior allegations of abuse could have been used to impeach C.T.'s testimony.

> The Petitioner was originally charged with abusing C.T. as well as A.A. but the charges involving C.T. were dismissed when the original indictment was dropped and Petitioner was re-indicted on the instant charges. C.T. testified as a witness for the prosecution pursuant to West Virginia Rule of Evidence 404(b) [footnote quoting rule omitted].

The Supreme Court has held that the Brady rule
extends to witness impeachment evidence.  See, *e.g.*,
Giglio v. United States, 405 U.S. 150, 154 (1972)("When
the reliability of a given witness may well be
determinative of guilt or innocence, nondisclosure of
evidence affecting credibility falls within [the Brady]
rule.") However, the substance of the testimony offered
by C.T. at trial was not such that it determined the
guilt or innocence of the Petitioner sufficient to
establish resulting prejudice.  "[T]he prosecutor is not
required to deliver his entire file to defense counsel,
but only to disclose evidence favorable to the accused
that, if suppressed, would deprive the defendant of a
fair trial." United States v. Bagley, 473 U.S. at 675,
citing Brady.

There was sufficient evidence of guilt offered at
trial to overcome any prejudice that may have resulted
from the testimony of C.T. whether she was impeached or
not.  It is also unclear whether the alleged impeachment
evidence would have been admissible at trial.   The
Supreme Court has not addressed the issue of whether
inadmissible evidence is material for purposes of Brady.
However, in Wood v. Bartholomew, 516 U.S. 1 (1995), the
Supreme Court noted that an inadmissible polygraph test
was not "evidence" and therefore was not material.  Id.
at 5-6. [FN 10]

> [FN 10 - Although not a ruling per se, the
> habeas court stated at the December 29, 2005
> habeas hearing: "So the only way the [C.T.]
> allegations against Mr. Forquer would be
> available would be if there was evidence,
> clear and convincing evidence that the
> allegations were false.  Otherwise, they're
> not admissible under the rape shield law."
> (Resp't Ex. 16 at 96.)

* * *

The only evidence regarding the prior allegations made by
C.T. were addressed in the December 9, 2005, habeas
hearing, at which time the prosecutor stated:

> "I don't believe there was ever a
> determination, your Honor, that [C.T.]'s
> allegations in regard to Michael Forquer were
> false or exaggerated or unsubstantiated in any

> regard.    It just appears to be one of those
> investigations, because he left the area, that
> they just didn't pursue farther."

(Resp't Ex. 16 at 97-98).

> Because it was never established that the prior
> allegations of C.T. were false, it cannot be said the
> State intentionally withheld evidence of false
> allegations.  Without a demonstration that the challenged
> evidence was either intentionally withheld or material to
> the defense, this claim fails.

(Id. at 25-26).

Concerning these claims, the state habeas court found as

follows:

> The evidence is that the statement made to Sheriff Null
> was disclosed far in advance of the November, 1999 trial.
> The State met its discovery obligations as they relate to
> the statements of [A.A.]

(# 9, Ex. 8 at 5).

Based upon the federal authority cited by Respondent, the

undersigned proposes that the presiding District Judge **FIND** that

there is no evidence of prosecutorial misconduct sufficient to

establish a violation of Petitioner's constitutional rights based

upon these claims.  Accordingly, the undersigned further proposes

that the presiding District Judge **FIND** that the state courts'

denial of habeas corpus relief on these claims was neither contrary

to, nor an unreasonable application of, clearly established federal

law, and that Respondent is entitled to judgment as a matter of law

on these claims.

The state habeas court did not specifically address the failure to disclose that C.T. had alleged a claim of sexual abuse against Michael Forquer, prior to her allegations against Petitioner.  The United States Court of Appeals for the Fourth Circuit has determined that "the phrase 'adjudication on the merits' in § 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 2000).  When a state court summarily rejects a claim without setting forth its reasoning, the federal court reviews the record and the clearly-established Supreme Court law, but still "confine[s] [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir. 2000).

Based upon Bell v. Jarvis, *supra*, 236 F.3d at 163, the undersigned proposes that the presiding District Judge **FIND** that the summary refusal of this claim was an adjudication on the merits for purposes of § 2254(d).  Therefore, the undersigned proposes that the presiding District Judge **FIND** that the appropriate standard of review for this claim of prosecutorial misconduct is an independent, but deferential, review of the record and the applicable law to determine whether the state court's decision

54

(i.e. the "result") was legally or factually unreasonable.

The federal precedent cited by Respondent governs this claim. The fact that C.T. had made prior allegations of sexual abuse by another man, Michael Forquer, is certainly relevant to the issue of her credibility and, if admissible, could have been used by the defense as impeachment evidence. Giglio v. United States, *supra*, 405 U.S. at 154. However, as noted by the state habeas court, in order to be admissible as an exception under the West Virginia rape shield law, there must be clear and convincing evidence that the allegations against Mr. Forquer were false. (# 11, Ex. 16 at 96).

The evidence established during Petitioner's habeas hearings indicates that the investigation into whether Michael Forquer had sexually abused C.T. was dropped when Mr. Forquer left the area. There is no clear and convincing evidence that the allegations were unfounded or false, and thus, there is no reasonable basis to believe that such evidence would have been admissible to be used as impeachment evidence at Petitioner's trial on charges of sexual misconduct against A.A. Nor has Petitioner demonstrated that there is a reasonable probability that the outcome of his trial would have been different if this evidence had been disclosed and been found to be admissible.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the conduct of the prosecution in failing to disclose this evidence

resulted in a violation of Petitioner's constitutional rights. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the denial of habeas corpus relief on this claim was not legally or factually unreasonable, and that Respondent is entitled to judgment as a matter of law on this claim.

       c.  Prosecutor's comments in closing argument.

In Ground Six of his federal petition, Petitioner also alleges that the prosecuting attorney violated his due process rights "by making improper remarks to the jury during his arguments." (# 2, Appx. B at 18-19). Petitioner specifically alleges that the prosecutor "stated that he believed that the Petitioner was guilty and suggested that defense counsel thought likewise. Further, the prosecuting attorney vouched for the credibility of both A.A. and C.T., which was clearly unjust. (Transcript March 27 28, 2000 Trial p. 336-337)." (Id.)

Respondent's Memorandum of Law correctly asserts that "habeas relief is only warranted if the prosecutor's remarks rendered the Petitioner's trial fundamentally unfair." (# 10 at 26). The United States Supreme Court has held that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether prosecutor's conduct affected fairness of the trial." United

States v. Young, 470 U.S. 1, 11 (1985).

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999)(citations omitted), abrogated on other grounds, Mackey v. Dutton, 217 F.3d 399, 406 (6th Cir. 2000); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986)("The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'") (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

The Fourth Circuit has enumerated factors to be considered in determining whether improper comments were so damaging to a defendant's trial that his defense was substantially prejudiced, so as to require reversal of his conviction.  Those factors are: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.  United States v. Mitchell, 1 F.3d 235, 241 (4th Cir. 1993).

Respondent's Memorandum of Law specifically contends:

> The Petitioner claims, with no supporting argument or citation to the statements of the prosecutor other than a generalized reference to the trial transcript, that the prosecutor made prejudicial statements in closing. (Petition at 18.) The Petitioner goes no further. This is insufficient to satisfy the burden of demonstrating that the prosecutor's statements rendered the trial fundamentally unfair. Moreover, the Petitioner relies solely on state law and cites no federal authority to support this claim. [footnote omitted]. To the extent that the Petitioner claims that the prosecutor believed him to be guilty, the State is always free to make a strong closing based upon reasonable inferences drawn from the evidence. <u>United States v. Francisco</u>, 35 F.3d 116, 120 (4th Cir. 1994)("It is undisputed that closing argument is not merely a time for recitation of uncontroverted facts, but rather the prosecution may make fair inferences from the evidence.")

(# 10 at 27).

The state habeas court made the following ruling concerning the prosecutor's remarks at trial:

> The statements of the Prosecuting Attorney during his closing statement were argument. The Court thoroughly cautioned the jury as to what weight they should give to arguments of counsel. A conviction should not be reversed because of improper statements by the Prosecuting Attorney which do not clearly prejudice the accused or result in manifest injustice. The comments of the Prosecuting Attorney were not unfairly prejudiced and did not create manifest injustice.

(# 9, Ex. 8 at 5).

Although Petitioner did not specifically identify at which trial he believes the prosecutor made improper remarks in closing argument, he cites to the transcript from the re-trial on Count Four on March 27-28, 2000. (# 2, Appx. B at 19). The undersigned has reviewed the transcript from that trial and finds nothing

58

improper about the prosecutor's closing argument.  Furthermore, as noted by the state habeas court, the jury was instructed that the comments of the lawyers were not evidence and were not to be considered as matters of fact, and jurors are presumed to follow the court's instructions.  See Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985), citing Parker v. Randolph, 442 U.S. 62, 73, 99 (1979).  (Id.)

Based upon a thorough review of the trial transcripts and the other state court records, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's rights to due process and a fair trial were not violated by the conduct of the prosecutor.  The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, and that Respondent is entitled to judgment as a matter of law on this claim.

**7.   Ground Seven - Denial of Probation.**

In Ground Seven of his federal petition, Petitioner alleges that his Fifth Amendment right against compulsory incrimination was violated when the trial judge considered Petitioner's failure to admit to the charges as evidence of unfitness for probation.  (# 2, Appx. B at 21).  Specifically, Petitioner states:

At sentencing, the Petitioner prayed for probation. As a condition of probation, the Petitioner was required to submit to a pre-sentence psychiatric and psychological report from a physician and psychiatrist and to develop a rehabilitative plan for treatment to prevent reoccurrence [West Virginia Code Chapter 62, Article 12, Section 2(3)]. In this case, the examination and report was done by a Dr. Smith from Charleston, West Virginia. At the examination, the Petitioner, as he has consistently done, denied sexually abusing or assaulting the girls. The report said that since the Petitioner would not admit the charges, that he was not a candidate for a rehabilitative plan. Subsequently, the court acknowledged the Petitioner's right not to incriminate himself and that he was not required to admit the allegations in order to receive probation. However, the Petitioner's motion for probation was effectively prevented by his refusal when the court noted the lack of rehabilitative plan based upon his failure to admit the charges. The examining psychologist/psychiatrist would not submit a plan for rehabilitation because the Petitioner denied the charges. Although the Court stated that it was inappropriate for the counselors to make this legal decision, the Court nonetheless used the report in denying the request for probation.

(Id. at 21-22).

Respondent asserts that Petitioner has not alleged a cognizable federal constitutional claim in regard to the denial of probation. Respondent contends that "Trial courts are permitted to sentence defendants within their discretion based on facts and considerations before the court so long as the sentence is within the statutorily prescribed limits." (# 10 at 29). Respondent further emphasizes that, at the sentencing hearing, the court stated: "Let me say that the failure to admit to the crime is not automatic disqualification for probation as far as the court is concerned." (Resp't Ex. 11 at 376). (Id.)

Respondent further asserts that:

> The court then proceeded to inform the Petitioner that it
> was the pre-sentence report considered as a whole that
> influenced the court's decision.  The trial court cited
> to the Petitioner's overall "negative report about [the
> Petitioner] and his psychological composition" that
> strongly influenced the determination of the sentence.
> (Id.)  The trial court further cited to the conclusions
> in the report stating that the Petitioner suffered from
> "adjustment disorder with impulsive and antisocial
> features . . . an explosive personality and could become
> extremely angry and violent." (Id. at 378.)  Also noted
> at sentencing was the Petitioner's history of violence,
> drug convictions and felony charges.

(Id. at 29-30).  Respondent further contends that the trial court

"did not condition the sentence on whether or not Petitioner

admitted to the crimes." (Id. at 30).

The state habeas court found as follows:

> The Court denied the Petitioner probation based upon
> the entire record before the Court at the time of
> sentencing.     The Court considered all of the
> circumstances of the case, the entire pre-sentence
> report, the psychiatric and psychological evaluations,
> and statements made at the sentencing hearing.  The Court
> did not deny probation based on the Petitioner's refusal
> to admit guilt or not having a treatment plan in place.

(# 9, Ex. 8 at 6).

During the sentencing hearing, Petitioner and his counsel,

Patrick Radcliff, addressed this issue.  First, in response to the

court's asking if Petitioner wished to say anything before sentence

was imposed, Petitioner stated: "They told me that, when I went up

for this evaluation, I could probably walk away with probation if

I would plead yes to everything, but I've told the truth all along

the best I could.  I've still been found guilty.  There's very

61

little left to say." (# 11, Ex. 11 at 374).  Mr. Radcliff then
argued as follows:

> The recommendations of the psychological indicate
> that while they didn't develop a treatment plan, and one
> of the reasons that they gave they're not doing that is
> because the Defendant denied responsibility of the sexual
> assault, and this was the basis that Mr. McFarland had
> given me some cases.  They are out-of-state cases, two of
> them, but apparently there's several jurisdictions that
> hold this way, that is that a denial - - a person's
> denying that he committed the act should not be used as
> a basis for denying him probation.  Several of these
> cases where probation was revoked because the Defendant
> refused to admit, as a part of probation, that he
> committed the act, and these cases have held that it's a
> violation of the Fifth Amendment to require them to admit
> to doing the act as a condition for probation.

(Id. at 375).

> The trial court then made the following finding:

> THE COURT: Very well.  And I have read the Defendant's
> nine page letter, handwritten letter that was submitted,
> so I have his version of what happened.

> Let me say that failure to admit to the crime is not
> automatic disqualification for probation as far as the
> Court is concerned.  However, what the doctor in
> Charleston is probably telling him is that he would have
> a better chance at rehabilitation if he would admit to
> the crimes the jury has found beyond a reasonable doubt
> that he has committed.  Certainly, whoever did the
> examination has no authority to say the Court will or
> will not grant probation.

> So I hope Mr. Nutter understands that, and any
> decision regarding probation will be independent from the
> fact of whether he admitted or denied the crimes to the
> psychologist and psychiatrist.  However, I'll consider
> other aspects of the report, which can best be described
> as a negative report about Mr. Nutter and his
> psychological composition.

(Id. at 376).  The Court further found:

The psychologist and psychiatrist found that the Defendant had adjustment disorder with impulsive and antisocial features. They felt he had an explosive personality and could become extremely angry and violent.

The defendant has one prior felony conviction for delivery of a controlled substance. He has a previous battery conviction.

These crimes that he's convicted of are recognized by our legislature as some of the most severe crimes that can be committed. That is shown by the penalties which the legislature has indicated are appropriate in these types of cases.

The Defendant seems to blame everyone except himself for the trouble he's in. He blames law enforcement, the Prosecutor, the judicial system. I noticed in his letter he's even blaming his own attorney and blames other people that have been involved in his life. Everyone's to blame except himself.

I don't see much chance of the Defendant being rehabilitated. The motion for probation or alternative sentencing will be denied.

(<u>Id.</u> at 378-379).

It is readily apparent from this record that the trial court's discretionary denial of Petitioner's request for probation did not result solely from Petitioner's refusal to admit to the conduct of which he was convicted. Thus, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated a violation of his Fifth Amendment rights. Furthermore, as noted by Respondent, because Petitioner's sentences are within the statutory limits set for those crimes by the West Virginia legislature, they are not subject to habeas review. <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948).

The undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, and that Respondent is entitled to judgment as a matter of law on this claim.

### 8.  Ground Nine - Admission of victim's out-of-court statement.

In Ground Nine of his federal petition, Petitioner alleges that the trial court improperly admitted out-of-court statements of the victim, A.A., even though she was available to testify in person.  Petitioner does not identify the specific statement(s) about which he is complaining. (# 2, Appx. B at 29-30).  He states only, "Here, the statements of A.A. were made to C.T. and to A.A.'s mother."  (Id. at 29).  Thus, the undersigned assumes that Petitioner is talking about the content of the notes that A.A. wrote to C.T. and to her mother.

Petitioner further states:

> Before admitting hearsay statements made by a child witness in child sexual abuse case, the trial court must find that the child was particularly likely to be telling the truth when the statement was made. [United States] v. Tome, [61 F.3d 1446 (10th Cir. 1995).  Factors to be considered include the spontaneity of the child's statement, consistent repetition of the allegation, the mental state of the child, the use of terminology expected of a child of similar age, and the lack of motive to fabricate. [Id.]

(Id.) Petitioner contends that "the erroneous admission of hearsay

64

testimony is unconstitutional error" and "the reviewing court must decide whether the statements, in light of [the] whole record, substantially influenced the outcome of [the] trial or whether the court is left in grave doubt as to whether it had such an effect. [Tome, 61 F.3d at 1455.]" (Id.)

Petitioner further asserts that "the State relied heavily on these statements in closing arguments as verification that A.A. was telling the truth. The prejudicial effect of these statements cannot be overestimated. This is true because here there is a substantial absence of any other corroborating evidence." (Id. at 30).

Respondent contends that A.A. testified at trial, and was available for cross-examination about these statements, and reiterates that the victim's testimony alone was sufficient to sustain Petitioner's convictions. Thus, Respondent asserts that "Petitioner has failed to demonstrate that the admission of the challenged evidence was either in error or sufficient to undermine the reliability of the verdict as required to raise a federal issue." (# 10 at 48).

The state habeas court found as follows on this claim:

> The Petitioner failed to show any impermissible hearsay was admitted in the trial. Prior consistent statements of a witness are admissible when the credibility of that witness is attacked. Often disclosures are admitted for purposes other than the truth of the matters asserted. Sometimes hearsay comes in if there is no objection by counsel.

(# 9, Ex. 8 at 10).

In order to state a cognizable claim, Petitioner must demonstrate that the court's allegedly erroneous admission of this evidence impugned the fundamental fairness of his trial, or infringed upon specific constitutional protections. Grundler v. North Carolina, 283 F.2d 798, 892 (4th Cir. 1960); Gaskins v. McKellar, 916 F.2d 941, 949 (4th Cir. 1990).

> While this Court stands ready to correct violations of constitutional rights, it also holds that "it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as demonstrable reality." United States ex rel. Darcy v. Handy, 351 U.S. 454, 462, 76 S. Ct. 965, 970, 100 L. Ed.2d 1331 (1956).

Beck v. Washington, 369 U.S. 541, 558 (1962).

The erroneous admission of hearsay testimony is a non-constitutional error, Tome, 61 F.3d at 1455, and Petitioner has not specified how the admission of these out of court statements substantially influenced the jury's verdict, when the child victim testified and was cross-examined. Petitioner has not demonstrated that the admission of the evidence concerning A.A.'s statements to C.T. and Jan Goodnight was fundamentally unfair or manifestly unjust.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not stated a cognizable claim concerning the admission of this evidence, that the state

66

courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

**9.   Ground Ten - Admission of counselor's opinion.**

In Ground Ten of his federal habeas petition, Petitioner asserts that the trial court improperly allowed the victim, A.A.'s counselor, Colleen Laskoski, to opine that A.A. exhibited signs of a person who had been sexually abused or assaulted. (# 2, Appx. B at 30). Specifically, Petitioner states:

> In the Petitioner's case, the testimony of A.A.'s counselor did not offer any significant new facts for jury consideration. The testimony only served to bring credibility to the claims of A.A. by stating that the counselor believed that A.A. exhibited the signs of a person who had been sexually abused or assaulted. (Transcript March 27, 28, 2000 Trial pp. 178-188). There was no scientific basis for this opinion. It was the mere "belief" of a counselor who was by her own admission advocating for her client.
>
> The determination about whether or not A.A. had been sexually abused or assaulted is within the sound reasoning and purposes of the jury as part of their deliberations. Allowing this additional opinion testimony only served to inflame the jury and allowed it to form an opinion it may not otherwise have made.

(Id.)

On this issue, Respondent's Memorandum of Law states:

> The Petitioner does not allege the evidence at issue violated any specific constitutional guarantees. Rather, the Petitioner only argues that the challenged evidence was admitted in error pursuant to state law.

(# 10 at 49). Respondent further asserts that the challenged

67

testimony was admissible under West Virginia law, citing to the SCAWV's decision in State v. Edward Charles L., 398 S.E.2d 123, 141 (W. Va. 1990), which held:

> [W]e adopt the holding and rationale of the courts which permit expert psychological testimony in cases involving incidents of child sexual abuse, and determine that an expert may state a conclusion as to whether a child who is alleged to be the victim of sexual abuse or assault exhibits behavior consistent with being so victimized, and may give an opinion as to whether the child has been sexually abused. Such expert may not give an opinion on whether he personally believes the child, nor on the issue of whether the defendant was the perpetrator of the abuse or assault, for that would improperly and prejudicially invade the province of the jury. Thus, we find that the expert's testimony in this case was permissible and the trial court committed no error in allowing the testimony in evidence.

(Id.)

The state habeas court found that "[t]here was no error in admitting the opinion testimony of the child's psychologist, Colleen Laskoski, that the child exhibited symptoms consistent with a child who had been sexually abused." (# 9, Ex. 8 at 10).

The admission of Ms. Laskoski's opinion testimony was consistent with the holding in State v. Edward Charles L. discussed above. The undersigned has reviewed Ms. Laskoski's testimony at both of Petitioner's trials and finds that she did not improperly opine either that she believed the victim, A.A., or that she believed that Petitioner was the perpetrator of sexual abuse or assault on A.A. Ms. Laskoski simply testified to what A.A. told her had happened to her, and discussed the symptoms of sexual abuse

that she believed A.A. exhibited.  Furthermore, on cross-examination, Petitioner's counsel was able to place Ms. Laskoski's potential bias as a therapeutic, rather than a forensic, counselor before the jury.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that the admission of Ms. Laskoski's opinion testimony either impugned the fundamental fairness of Petitioner's trial or that it in any way infringed upon any of Petitioner's federal constitutional rights.  The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, and that Respondent is entitled to judgment as a matter of law on this claim.

**10.  Ground Twelve - Excessive sentence.**

In Ground Twelve of his federal petition, Petitioner asserts that his sentences are unconstitutional because they constitute cruel and unusual punishment in violation of his Eighth Amendment rights.  (# 2, Appx. B at 31).  Petitioner states:

> The guidelines for this type of claim are well defined.  The West Virginia Supreme Court has outlined a two part test, both subjective and objective.  The subjective inquiry is whether the sentence for the particular crime shocks the conscience of the court and society.  The objective standard is one of disproportionality as set out in <u>Wanstreet v. Bordenkircher</u>, 166 W. Va. 523, 276 S.E.2d 205 (1981).  In addition Petitioner cannot be punished more severely for

> maintaining his innocence or exercising his right to trial. <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 985 [S.] Ct. 663 (1978). In this case, the Petitioner's sentence of sixteen to forty years is shocking and unduly harsh. This is especially true in light of the statements and testimony of A.A. that the digital penetration was slight and lasted only a few seconds.

(<u>Id.</u>)

Respondent again emphasizes that "[a] sentence that is imposed within statutory limits is not generally subject to habeas review." (citing <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948)). (# 10 at 51). Petitioner was sentenced within the statutory limits set by the West Virginia legislature on both of his counts of conviction. Respondent further asserts:

> "Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as the discretion that trial courts possess in sentencing convicted criminals." <u>Solem v. Helm</u>, 463 U.S. 277, 290 (1983). Moreover, "outside the context of a capital sentence a proportionality review is necessary only with respect to sentences of life imprisonment without the possibility of parole." <u>Beverati v. Smith</u>, 120 F.3d 500, 504-05 (4th Cir. 1997).

(<u>Id.</u> at 51-52). Respondent contends that Petitioner has not sufficiently raised a federal constitutional claim concerning cruel and unusual punishment as it relates to the length of his sentences. (<u>Id.</u> at 52).

The state habeas court made a simple finding that "the Petitioner's sentence does not constitute cruel and unusual punishment." (# 9, Ex. 8 at 10).

The Eighth Amendment provides a narrow proportionality guarantee in non-capital cases, which forbids only "extreme sentences" that are "grossly disproportionate" to the crime. Harmelin v. Michigan, 501 U.S. 957, 996-997, 1001 (1991). In a badly-splintered plurality opinion, the Court restricted proportionality review to the "rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1005.

Justice Kennedy, concurring in the opinion, identified four "principles of proportionality review" which were common to the Court's jurisprudence: (1) the primacy of the legislature; (2) the variety of legitimate penological schemes; (3) the nature of our federal system; and (4) the requirement that proportionality review be guided by objective factors. Id. at 998-1001.

In Ewing v. California, 123 S. Ct. 1179 (2003), the United States Supreme Court again addressed the issue of disproportionate sentences under the Eighth Amendment, applying the proportionality principles recognized in Justice Kennedy's concurrence in Harmelin to a sentence imposed under California's three strikes rule. The Court found that Ewing's sentence of 25 years to life for felony grand theft was not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Id. at 1190 (quoting Harmelin, 501 U.S. at 1005).

71

Here, the West Virginia legislature has set sentencing ranges for sexual offenses by statute, and has found such crimes, particularly first degree sexual assault, to be severe. The statute governing the offense of sexual assault in the first degree sets a sentence of 15-35 years for any conviction on that offense, and the statutory language makes penetration, however slight, an element of that crime. Thus, Petitioner's assertion that the alleged penetration of his finger was slight and only for a few seconds is not sufficient to argue that his sentence of 15-35 years is "grossly disproportionate" to the crime. The court cannot find that a sentence within the limits set by the state legislature shocks the conscience of the court or society.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his sentences of 1-5 years on one count of sexual abuse in the first degree, and a consecutive term of 15-35 years on one count of sexual assault in the first degree, constitute cruel and unusual punishment, or that they in any way violate his federal constitutional rights. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, and that Respondent is entitled to judgment as a matter of law on this claim.

72

**11.  Grounds Eight and Eleven - Ineffective Assistance of Counsel.**

Petitioner has raised numerous claims of ineffective assistance of counsel in his federal petition.  In Ground Eight of his federal petition, Petitioner has asserted 17 separate claims of ineffective assistance of counsel.  Furthermore, in Ground Eleven, Petitioner asserts that he received ineffective assistance of counsel at sentencing.  The undersigned will address these claims in turn.

The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court adopted a two-pronged test for determining whether a defendant was provided inadequate assistance of counsel.  The first prong is competence; Petitioner must show that the representation fell below an objective standard of reasonableness.  Id. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  Id. at 688-89.

> In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

73

reasonable professional judgment.

Id. at 690.

The second prong is prejudice; "[Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." Holman v. Gilmore, 126 F.3d 876, 881 (7th Cir. 1997). Using this standard, and based upon all of the evidence of record, the court will address the merit of each of the claims of ineffective assistance of counsel in the order they were presented by Petitioner.

a. Counsel suggested defendant was guilty.

Petitioner's first claim of ineffective assistance of counsel contained in his federal petition alleges that, during closing arguments, his counsel "flatly and repeatedly stated that the Petitioner may have been guilty of the offenses charged and constantly overemphasized the reasonable doubt argument, effectively leading the jury to infer the Petitioner's guilt. (Transcript March 27 28, 2000 Trial pp 340-355)." (# 2, Appx. B at 22). Petitioner adds:

> While it's improper for the prosecuting attorney to suggest that he believes a defendant to be guilty, the damage and prejudice is tenfold when defense counsel suggests his client may be guilty. Even though it is

usually considered appropriate for defense counsel to make a reasonable doubt argument to a jury, it is never to infer or allow the jury to infer guilt, even indirectly. Counsel owes a duty of loyalty to his client. However, in this case, counsel's argument was sadly deficient as it went well beyond the bounds of the reasonable doubt argument. This fact is painfully obvious upon a full review of counsel's closing argument, particularly at the second trial where the Petitioner was convicted of First Degree Sexual Assault.

(Id. at 23).

Concerning this claim, Respondent asserts that Petitioner's counsel merely argued that the State had not met its burden of proof, and "[t]his was clearly a theory of defense and a pure matter of trial strategy." (# 10 at 32). Respondent further asserts that Petitioner has not demonstrated that his counsel's approach was unreasonable. (Id.)

The state habeas court found that "Petitioner's trial counsel's closing arguments did not constitute ineffective assistance of counsel." (# 9, Ex. 8 at 6).

The undersigned has reviewed the closing arguments made by Petitioner's counsel at both of Petitioner's trials. In both trials, Petitioner's counsel emphasized that the standard of proof to convict Petitioner was beyond a reasonable doubt.

In the first trial, Petitioner's counsel stated: "There's so much doubt in this case that it's not hard to find and it's way beyond a reasonable doubt. There's just too much doubt in this case. And Nutter took the stand and he swore and he told you this never happened." (# 9, Ex. 10 at 479). The undersigned finds that

75

this was reasonable trial strategy.

In the second trial, Petitioner's counsel again emphasized the reasonable doubt standard, and highlighted how the State had not met that burden of proof concerning the essential elements of sexual assault in the first degree. Mr. McFarland stated:

> The State has the burden of proof in this case. The State has the burden of proof and Victor Nutter has no burden of proof. He doesn't have to prove anything. He doesn't have to prove his innocence. The State must prove his guilt with evidence. So if you believe that the State didn't offer enough evidence on any particular element of that charge, then you can acquit him.

> Now, that does not mean he's innocent. Okay? There's three choices on your verdict form: guilty of sexual abuse in the first degree, guilty of sexual assault in the first degree and not guilty. Now, where on that verdict form does it say innocent? You are not considering whether he's innocent. You're considering whether he's not guilty or whether he's guilty, and not guilty means simply that the State has not proven the case in the strict and concise manner that the law requires.

(# 9, Ex. 11 at 342-343).

The undersigned does not find that this was a suggestion that Petitioner was guilty. Again, it was a reasonable strategic argument that the State had not met the required burden of proof. The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his right to effective assistance of counsel was violated by Mr. McFarland's closing argument. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' denial of habeas corpus relief on this claim were neither contrary to, nor an unreasonable

application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

      b.   Failure to adequately investigate and interview defense witnesses.

This is the first of several claims that Petitioner makes that Mr. McFarland failed to adequately investigate issues in his case and failed to interview witnesses.  In this claim, Petitioner states:

> In addition, defense counsel failed to adequately investigate and interview all defense witnesses.  This fact was brought to an even brighter light when defense counsel admitted he was unsure if a person in the courtroom was a defense witness.  This admission came at the second trial at which the Petitioner was convicted of First Degree Sexual Assault.  While it is difficult to quantitatively assess the damage this lack of preparation caused, the prejudice is unmistakable.  One can only presume, since this admission came at the second trial, that counsel had not properly prepared for Trial 1 as well.  Certainly this lack of preparation had a significant impact on counsel's trial performance, especially when combined with his decidedly substandard closing argument.

(# 2, Appx. B at 23).

Respondent contends that "Petitioner makes generalized, speculative and unsupported statements without indication of what exculpatory evidence could have been revealed from further investigation.  This is insufficient to raise a claim of ineffective assistance of counsel."  (# 10 at 33).

On this claim, the court found that "[t]here is not sufficient evidence that the Petitioner's trial counsel did not adequately

prepare for trial.   No prejudice is shown by trial counsel's failure to recognize a witness in the courtroom."  (# 9, Ex. 8 at 6).

In <u>Wiggins v. Smith</u>, 539 U.S. 510, 521-522 (2003), the Supreme Court emphasized that "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Furthermore, in the American Bar Association's "Standards for Criminal Justice," which serve as a guide for assessing reasonable conduct, Standard 4-5.2, concerning "Control and Direction of the Case," states as follows:

> (b) Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate.  Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

ABA Standards for Criminal Justice, Standard 4-5.2.

In his petition, Petitioner has not identified what additional witnesses should have been interviewed or what additional investigation should have been done, and he has not demonstrated how any such additional investigation would have altered the outcome of his trials.  During Petitioner's multiple habeas corpus hearings, Petitioner called a litany of witnesses who testified either that Mr. McFarland never interviewed them or that they were not called to testify.   Those witnesses included Petitioner's

mother, who did not testify at either trial, and his sister, who did testify at the second trial.  From their testimony at the habeas hearing, it appears that their trial testimony would have been cumulative of other testimony on the issue of whether Petitioner had a lustful disposition toward young females.  (# 11, Ex. 13 at 38, 45-47).

Petitioner also called several witnesses at the habeas hearing who testified that, since the time of Petitioner's trial, they have learned of information that calls C.T.'s credibility into question. (# 11, Ex. 13 at 29-36, 39-42, 43-51 and 52-58).  These witnesses did not have such knowledge at the time of Petitioner's trial; thus, this evidence is irrelevant to Petitioner's instant claim.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that Mr. McFarland's conduct in investigating and interviewing defense witnesses fell below an objective standard of reasonableness, or that Petitioner suffered any undue prejudice from Mr. McFarland's conduct.  The undersigned further proposes that the presiding District Judge **FIND** that the state courts' denial of habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

c.    Failure to impeach State witnesses.

Petitioner further contends that Mr. McFarland failed to impeach State witnesses, in particular the alleged victims and the investigating officer, with prior inconsistent statements. Specifically, Petitioner states:

> While counsel made arguably reasonable efforts to use the prior statements of A.A. and C.T. at the first trial, he appeared to "throw in the towel" at the second trial. Counsel did not do a thorough or even reasonable job of cross-examining them based on their prior statements or prior testimony, letting the little details slide.

(# 2, Appx. B at 23-24).  Petitioner does not elaborate on the allegedly inconsistent statements that he believes his counsel should have used to impeach these witnesses.

Respondent asserts that "Petitioner does not cite to what information could have been brought out on cross-examination that was significant enough to alter the outcome of the proceedings. The Petitioner only states that trial counsel failed to cross-examine the witnesses about prior inconsistent statements." (# 10 at 33-34).  Respondent further asserts:

> Prior inconsistent statements do not presumptively impeach a witness.  Without more, this claim is purely speculative and insufficiently pled.  It is not the duty of this Court or the Respondent to analyze the record and determine what information could have been brought out on cross-examination, then proceed to analyze such information for admissibility and then possible resulting prejudice. "The perfunctory and conclusorial assertion . . . will not suffice.  'Judges are not like pigs, hunting for truffles buried in briefs.'" de la O v. Housing Authority of City of El Paso, 417 F.3d 495, 501 (5th Cir. 2005)(citing United States v. Dunkel, 927 F.2d 955, 056 (7th Cir. 1991).  Moreover, impeaching a child

victim of sexual abuse and a child witness who was a victim of sexual abuse can alienate a jury and such a decision is not subject to hindsight without more substantiating argument. "To fault counsel for not asking these particular questions is to engage in the kind of hindsight second-guessing that <u>Strickland</u> warned against." <u>Martinez v. Quarterman</u>, [2007] WL 685964 *5 (5th Cir. 2007), citing <u>Strickland</u> (holding that defendant could not show that strategic decision by defense counsel had prejudiced him, as required to establish that he had received ineffective assistance of counsel).

(<u>Id.</u> at 34).

The state habeas court found as follows on this issue:

There is insufficient evidence that trial counsel did not effectively cross examine witnesses. There is no evidence that the Petitioner's trial counsel "threw in the towel" at the Petitioner's final trial. On the contrary, trial counsel vigorously represented the defendant at all three trials.

(# 9, Ex. 8 at 6).

This claim is principally based upon Petitioner's assertion that his counsel failed to cross-examine state witnesses about prior inconsistent statements. A defendant is guaranteed "an opportunity for effective cross-examination, not cross-examination that is effective in every way, and to whatever extent, the defendant might wish." <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985). Cross examination techniques are generally committed to the professional discretion of counsel. <u>Dell v. Straub</u>, 194 F. Supp.2d 629, 651 (E.D. Mich. 2002)(citing <u>Henderson v. Norris</u>, 118 F.3d 1283, 1287 (8th Cir. 1997). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective

81

assistance of counsel simply because in retrospect better tactics may have been available." Id. It is well-settled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

Petitioner does not identify specific witnesses or the inconsistent statements they allegedly made. Thus, Petitioner has not shown that his counsel's failure to develop evidence of inconsistent statements by the alleged victims, even if unreasonable, was prejudicial to his defense. Petitioner has not shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Thus, the court proposes that the District Court **FIND** that Petitioner has not made a sufficient showing of ineffective assistance of counsel based upon these grounds.

The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law.

> d.   Failure to adequately research law and file motion in limine at second trial.

Petitioner further asserts that his counsel "did not effectively research the law pertaining to the Rule 404(b) evidence concerning lustful disposition and therefore was not prepared to effectively argue the relevant case law on this matter." (# 2,

Appx. B at 24).   Petitioner further alleges:

> After the in camera hearings at the first trial and
> subsequent hung jury, counsel had an excellent
> opportunity to review this applicable case law and file
> a motion in limine to exclude the evidence previously
> admitted under Rule 404(b) of the West Virginia Rules of
> Criminal Procedure.   The prejudicial effort of this
> evidence cannot be overestimated.   At both trials, the
> only evidence of the abuse presented was the testimony of
> A.A.   Without C.T.'s testimony under Rule 404(b), it is
> unlikely that the Petitioner could have been convicted,
> especially of First Degree Sexual Assault.

(Id. at 24).

Respondent's Memorandum of Law addresses this claim as follows:

> In order to demonstrate unreasonableness, the
> Petitioner would have to establish that the challenged
> evidence was not admissible and that it was the result of
> trial counsel's deficient research that allowed otherwise
> inadmissible evidence to be admitted at trial.   The
> Petitioner would then have to demonstrate that the
> otherwise inadmissible evidence was prejudicial.
> However, the Petitioner cites to no state statute or
> common law or any other authority, federal or state,
> holding that the challenged evidence was erroneously
> admitted under the circumstances.   Without such a
> showing, the Petitioner cannot demonstrate
> unreasonableness.

(# 10 at 35).

The state habeas court found that "[t]he Rule 404(b) evidence was clearly admissible.   Trial counsel['s] performance had absolutely nothing to do with the decision to admit that evidence." (# 9, Ex. 8 at 6).

A lengthy in camera hearing was conducted during the first trial, after which the trial court determined that C.T.'s testimony

83

and other evidence pertaining to C.T.'s allegations of sexual abuse
by Petitioner would be admissible under Rule 404(b) of the West
Virginia Rules of Evidence and the SCAWV's holding in <u>State v.
Edward Charles L.</u>, 398 S.E.2d 123 (W. Va. 1990), to support the
State's argument that Petitioner had a lustful disposition toward
young females.

It is not the province of this federal habeas court to re-
visit a state trial court's determination of the admissibility of
evidence under state law.  Rather, this court must merely determine
whether the Petitioner's defense suffered any undue prejudice by
the admission of that evidence, resulting from counsel's
performance.

On November 8, 1999, before Petitioner's first trial on the
sexual misconduct charges involving A.A. began, a pre-trial motions
hearing was held.  During that hearing, the court dismissed the
charges contained in the indictment concerning the alleged sexual
abuse of C.T., because they were, in fact, misdemeanor charges that
had been brought after the expiration of the applicable statute of
limitations.  (# 9, Ex. 10 at 3-5).

At the same hearing, however, the State moved, pursuant to
Rule 404(b) of the West Virginia Rules of Evidence, to allow C.T.'s
testimony and related evidence at the trial on the remaining
charges, on the basis that the evidence "shows basically the
propensity or lustful disposition toward children . . . ." (<u>Id.</u> at

84

5).   Mr. McFarland objected to the admission of such evidence before the in camera hearing took place (id.), and he made the following argument at the conclusion of the in camera evidence:

> Before this evidence is admitted, your Honor has to find from a preponderance of the evidence that it happened in the first place.   There's no evidence to support it, there's no corroboration, and it's extremely prejudicial.   Extremely prejudicial.   The prejudice lies in his -- and is protected in most places by the rule. Rule 403 and 404 recognize the prejudice of collateral acts.
>
> And you must find that it happened, and given her testimony, the manner in which she testified, her inability to recollect what she originally told the trooper as to what happened, her inability and inconsistent statements concerning the dates clearly mitigate against a finding by a preponderance of the evidence that it happened.
>
> Therefore, we would ask that the evidence be excluded from further exposure to the jury, that the jury not be exposed to it, that it not be disclosed to the jury and that Rule 404 apply.

(# 9, Ex. 10 at 259-260).

The trial court found that C.T.'s testimony was credible, and that there was other evidence to corroborate her testimony.   (Id. at 260-264).   Petitioner has not shown that additional legal research or the filing of a motion in limine before the second trial would have changed the trial court's ruling.   At both trials, Mr. McFarland placed objections on the record prior to C.T.'s testimony, in order to preserve this issue for appellate review. This action was objectively reasonable under the circumstances.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Mr. McFarland's conduct in defending against the admission of this 404(b) evidence was not objectively unreasonable, and that Petitioner has not demonstrated any undue prejudice from Mr. McFarland's actions. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' denial of habeas corpus relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

      e.    Failure to request adequate assistance for Petitioner to hear at trial.

Petitioner further asserts that Mr. McFarland did not effectively assist in resolving Petitioner's hearing problem in a way that still allowed him to participate in the trial and confront the witnesses against him. Petitioner states:

> Defense counsel never sought the assistance of an effective sound system to aid the Petitioner, who is hearing impaired, to be able to adequately hear the testimony at each trial. (Transcript Writ Hearing February 21, 2006, pp 18-20). In the second trial, this resulted in the Petitioner being placed out of sight of the alleged victim and away from his counsel, thus denying Petitioner his constitutional right of confrontation and to counsel. (Transcript Writ Hearing February 21, 2006 pp 20-24); Transcript Writ Hearing January 13, 2003, pp 135-137)
>
>         * * *
>
> It was well known to defense counsel and the Court that the Petitioner is deaf in one ear, and therefore the Petitioner has great difficulty hearing. In the first

86

trial, the Petitioner had to strain just to follow the
meaning of most of the testimony.  At the second trial
held in a large courtroom, the Petitioner could not hear
at all.  Here, defense counsel allowed, without
objection, the petitioner to be moved in front of the
Judge's bench wherein the Petitioner could neither see
nor hear the testimony of the witness.  In addition, he
was removed from his own Attorney's presence.
(Transcript March 27, 28, 2000 Trial pp 133-135) How then
would he assist in his defense?  This maneuver in one
step effectively abrogated both his right to
confrontation and to counsel.

(# 2, Appx. B at 24-25).

Concerning this claim, Respondent asserts:

The Petitioner claims that his position in the
courtroom, provided to accommodate his hearing problem,
deprived him of the right to confront the witnesses
against him.  (Petition at 24.)

This ground fails to state a claim for relief for
ineffective assistance of counsel.

The Petitioner claims that he was seated close to
the presiding judge, at trial, in order that he may
better understand the proceedings.  The Petitioner raised
no objection to this arrangement at trial and the record
reflects none.  "The reasonableness of counsel's actions
may be determined or substantially influenced by the
defendant's own statements or actions." Strickland[, 466
U.S.] at 691.

The Petitioner has made no showing that trial
counsel acted unreasonably or that the validity of the
conviction was compromised as a result.

(# 10 at 36).

The state habeas court found:

Reasonable accommodations were made so that the
Petitioner could hear soft spoken witnesses during each
trial.  The Petitioner was never out of sight or hearing
of any witness.  After accommodations were made, the
Petitioner did not complaint about inability to hear.

(# 9, Ex. 8 at 6).   The state habeas court further stated:

> At the March, 2000 trial in Doddridge County, the Petitioner was permitted to move closer to the witness stand.  The Petitioner moved to where the Court Reporter had been sitting.  The Court Reporter always sits where she can see the witness.  The Petitioner was not out of sight or hearing of the witness.  After Petitioner moved to the closer location, he made not further objections to being unable to hear.

(Id.)

Petitioner has not demonstrated that his counsel unreasonably ignored any requests by Petitioner for accommodation for his hearing problem, or that anyone other than Petitioner was aware that there were any problems with the location where Petitioner was moved during the trials.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has failed to demonstrate that his counsel provided ineffective assistance of counsel on this basis. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the State court decisions denying Petitioner habeas corpus relief on the basis of ineffective assistance of counsel were neither contrary to, nor an unreasonable application of, clearly-established Federal law.

f.   Opinion about compensation.

Petitioner also claims that Mr. McFarland told Petitioner that he would "get a better trial if he paid cash."  Petitioner states:

> Defense counsel stated that he would get a better trial if he paid cash, that counsel could then afford the time to research and defend his case.  (Transcript Writ

Hearing January 13, 2003, pp 128-130) This statement alone is probably not enough to prove an abrogation of the right to effective assistance of counsel. Perhaps counsel was merely reciting his frustration with the current state of the criminal defense system for appointed counsel. However, when taken in light of counsel's substandard performance, particularly at the second trial in which Petitioner was convicted on First Degree Sexual Assault, this statement is alarming. This statement further indicates that counsel was not as motivated and prepared to adequately defense the Petitioner's cause at it is constitutionally mandated.

(# 2, Appx. B at 25).

Concerning this issue, Respondent states:

There is no evidence of this on the record except for the self serving and unsupported assertions of the Petitioner offered at the January 13, 2003 habeas hearing. (Resp't Ex. 13 at 128-30.) Moreover, judging from the version of the conversation offered by the Petitioner, if anything, trial counsel merely made the time proven observation that better financial resources provide a better defense. Even if so, such an observation is not evidence of ineffective assistance of counsel, or a concession to a sub-par defense, but only an observation of the reality of court appointed counsel. The Fourth Circuit contemplated this very dynamic when it observed "the reasonableness of an investigation . . . must be considered in light of the scarcity of counsel's time and resources." McWee v. Weldon, 283 F.3d 179, 188 (4th Cir. 2002); see also Rogers v. Zant, 13 F.3d 384, 387 (11th Cir. 1994)(An examination of claims of whether a decision not to conduct a particular investigation was reasonable "reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources").

Any such statements made by trial counsel, even if true, demonstrates neither unreasonableness nor prejudice.

(# 10 at 36-37).

The state habeas court found that "[t]here is no evidence that Petitioner's counsel was not motivated or prepared to adequately

89

defend the Petitioner."   (# 9, Ex. 8 at 6-7).

Petitioner did not present any testimony from his former counsel at his habeas hearings[6].  Thus, the only evidence presented concerning this alleged statement by Mr. McFarland is Petitioner's own self-serving allegations.  Moreover, upon a thorough review of the record of both of Petitioner's trials, there is no evidence to support a claim that Mr. McFarland was not adequately motivated and prepared to defend Petitioner.   Petitioner has simply not demonstrated that his counsel's performance was objectively unreasonable, or that his defense suffered any undue prejudice therefrom.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel was constitutionally ineffective based upon this claim. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

---

[6]    Mr. McFarland, who had moved to Florida, would not voluntarily return to West Virginia to testify.  Although, at one point, it appeared that the parties were attempting to arrange for a deposition of Mr. McFarland, that apparently never occurred.

g.   Failure to exclude Sheriff Null's testimony at first trial.

Petitioner further alleges that Mr. McFarland "did not effectively prevent Sheriff Null from testifying at Trial 1 as to the alleged out of court statement of the Petitioner." (# 2, Appx. B at 25).  Petitioner adds:

It's noteworthy that this testimony was not offered by the State during Trial 2.  As discussed above, the first jury was extremely concerned with the testimony and appeared to have placed great weight on it, asking to have this testimony re-read or present in the jury room during deliberations.  Obviously this improper testimony had a prejudicial impact on that jury.

(Id.)

Respondent contends:

During the First Trial, trial counsel objected to the prosecution's rebuttal witness, Wirt County Sheriff Darrell Null, regarding certain statements made by the Petitioner about one of the victims[.]   Trial counsel requested an in camera hearing on the issue.  During the in camera hearing, trial counsel vigorously objected to the challenged testimony and argued against its admissibility.   The court overruled trial counsel's objections and allowed the testimony. (Resp't Ex. 10 at 413-14.)   Trial counsel objected and was overruled. There was no incompetence.  Aside from the absence of incompetence, the trial at which the challenged witness testified resulted in only a partial conviction.   The Second Trial at which the challenged witness did not testify resulted in a conviction.

Because trial counsel objected to the testimony, his actions were not unreasonable.  Therefore, there can be no finding of prejudice.

(# 10 at 37-38).

The state habeas court found as follows on this issue:

> The Petitioner's statement to the Sheriff was determined to be admissible after an in camera hearing. The performance of Petitioner's counsel had no bearing on the admissibility of the statement.

(# 9, Ex. 8 at 7).  The undersigned agrees.

Mr. McFarland objected to the admission of the testimony and the objection was overruled.  Mr. McFarland's conduct was not objectively unreasonable.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel was constitutionally ineffective based upon this claim.  The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

> h.  Failure to move for a mistrial based upon sleeping juror.

Petitioner also alleges as follows:

> Defense counsel did not raise an objection, move for mistrial or otherwise inform the Court when a juror fell asleep, when the Petitioner brought it to the attention of counsel.  This occurred at the second trial in which the Petitioner was convicted of First Degree Sexual Assault, and further demonstrates counsel's apathy in representing the Petitioner.  The overall impact of the juror missing some or all of the testimony cannot be truly accounted for.  Fundamentally, however, the Petitioner was entitled to have a full jury all of whom were aware and attentive to all arguments and testimony. (Transcript Writ Hearing January 13, 2003, pp 157-158).

92

(# 2, Appx. B at 25).

Concerning this issue, Respondent states:

There was no evidence from the record that a juror was in fact sleeping during either of the Petitioner's trials and therefore no evidence to support this claim. [Footnote omitted].    Even if a juror were in fact sleeping and it was noticed by the Petitioner, he bore his own responsibility to bring it to the attention of the court if no one else noticed or raised the issue including trial counsel.  See United States v. Carter, 433 F.2d 874 (876)(10th Cir. 1970)(concluding duty lies with defendant to promptly bring such matters as an allegedly sleeping juror to the attention of the court). However, there is no evidence on the record that the Petitioner raised the issue of a sleeping juror at any time during the trial.

(# 10 at 38-39).  Respondent also intimated that the failure to address this issue with the court could have been a matter of strategy by Mr. McFarland, if the juror was sleeping during the State's case in chief.  (Id. at 38 n.15).

The state habeas court found:

There is insufficient evidence that a juror was asleep at the March, 2000 trial.  The Petitioner never brought this to the Court's attention during or immediately after the trial.  If trial counsel had truly believed a juror was asleep, he would have brought this to the attention of the Court.

(# 9, Ex. 8 at 7).

These factual findings are entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1).  Petitioner has not shown any evidence, let alone, clear and convincing evidence, that a juror was sleeping at trial.  Furthermore, even if a juror were asleep during Petitioner's trial, Petitioner has not demonstrated

that his counsel's failure to address this issue with the court (if he was even aware of it) fell below an objective standard of reasonableness, or resulted in undue prejudice to Petitioner's defense.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel ineffective assistance with regard to this claim.   The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

> i.   Failure to request a medical examination of the victim.

Petitioner further claims that Mr. McFarland was ineffective because he failed to request that the alleged victim, A.A., be examined by a medical doctor for evidence of sexual abuse, until approximately one week before trial.   (# 2, Appx. B at 26). Petitioner states:

> Defense   counsel   failed   to   request   medical examination of the alleged victim, A.A., until forced by the Petitioner.   And by the time the examination was finally requested, it was too late it being but one week before the trial.   Since the Petitioner was convicted on   the   basis   of   digital   penetration   of   A.A.,   this examination could have revealed tearing or scarring to corroborate, and more importantly the lack thereof to demonstrate the lack of penetration.   Certainly any

examination would have been completed well after the passing of significant period of time due to the delay by the alleged victim in bringing the allegations. However, the evidence could have been crucial to the Petitioner's case. Further, no motion for such an exam was made subsequent to the first trial and prior to the second trial, when there would have been a substantial period of time for conducting this exam.

(Id.)

Respondent addresses this claim as follows:

The Petitioner was convicted of slightly penetrating the victim digitally on one occasion. A negative test would have been probative of nothing and a positive result known by trial counsel could have compromised aspects of the defense. Because physical manifestations of abuse are not required for a conviction, a negative test would have had no effect on the outcome of the trial. United States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001)(holding that "a victim's testimony alone is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt" in an abusive sexual contact case); cf Simmons v. Pryor, 26 F.3d 650, 654 (7th Cir. 1993)(holding that "visible evidence of bodily harm is not necessary to obtain a conviction" for battery). Therefore, trial counsel was not deficient in this regard.

(# 10 at 39-40).

Concerning this issue, the state habeas court found as follows:

The evidence in this case was that there was only slight penetration of the child's sex organ by the Petitioner's finger. Therefore, a medical examination of the child showing negative results would be inconclusive and of little evidentiary value. On the other hand, if the examination showed tearing or scarring, it would be extremely detrimental to the Petitioner's case.

(# 9, Ex. 8 at 7).

95

During the pre-trial motions hearing conducted on November 8, 1999, approximately one week before Petitioner's first trial, Mr. McFarland, at the request of Petitioner, moved for a medical examination of the alleged victim, A.A.  Mr. McFarland stated:

> This week, Mr. Nutter approached me concerning the making of a couple of motions.  Of course, I think we're beyond the motion deadline.  I would ask the Court to extend the motion deadline.
>
> * * *
>
> Second, Mr. Nutter wishes to, given the allegations that the second child, [] or A.A. . . . would like to have her examined to determine whether there is any evidence medically that she has been penetrated.  Such an examination could be done before trial and I could see to arrange it.

(# 9, Ex. 10 at 11-12).  The trial court ruled as follows on that motion:

> Number one, I don't believe the request for physical examination of the child is timely.  Second of all, I don't wish to subject the child to further intrusion by a physical exam a week before trial.  Apparently the State is not proposing to introduce any evidence regarding that.
>
> So I'm going to deny the motion for physical examination of the child.

(Id. at 15).

Despite the fact that Mr. McFarland waited until one week before trial to make this motion, it does not appear, given the allegation of slight penetration, and the significant amount of time that had passed between the time that the alleged sexual assault occurred and when A.A. reported it, that such an

96

examination would have demonstrated any material evidence, and it further appears to be unlikely that the trial court would have granted such a motion, even if it had been made earlier.

The undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel was constitutionally ineffective based upon this claim. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

> j.  Failure to request a psychological evaluation of the alleged victims.

Petitioner further alleges that Mr. McFarland was ineffective because he failed to request that the trial court order a psychological evaluation of both A.A. and C.T. prior to trial. Petitioner states:

> Defense counsel failed to request a forensic psychological/psychiatric examination of the alleged victim, A.A. and 404(b) witness C.T., even though Petitioner specifically requested his attorney to move for these examinations. While the granting or denying of this motion is usually within the discretion of the trial court, this type of evaluation is often conducted when the alleged victim is young and impressionable. State v. Stacy, 179 W. Va. 686, 371 S.E.2d 614 (1988). When a child's capacity to testify that she was the victim of sexual abuse or neglect is in question, the court should appoint a neutral child psychologist or psychiatrist to conduct a transcribed or otherwise recorded interview.

State v. Stacy.

    In this case, the alleged victim was decidedly
impressionable, calling into question her ability to
testify truthfully.  As discussed throughout this brief,
A.A. made allegations after several denials and after
C.T. had stated that she had been abused by the
Petitioner.  However, A.A. still did not reveal these
allegations until watching a television show on Oprah
Winfrey dealing with this subject matter.  All of these,
especially when added to the fact that she was angry with
Mr. Nutter for being "mean" and "unfair" and getting her
into trouble, suggest a young girl who lacked the ability
to testify competently and truthfully.  Counsel's failure
to investigate and explore this important line of defense
is therefore inexcusable.

(# 2, Appx. B at 26).

    Respondent addresses this claim as follows:

    With regard to the psychiatric evaluation requested
by the Petitioner, it is the duty of trial counsel to
determine when further examination is unnecessary or
fruitless.  Defendants are not entitled to unlimited
investigation on demand [citations omitted]. . . .
Further, there is no precedential authority in West
Virginia for performing a psychological evaluation on a
child sexual abuse victim simply to attack the victim's
credibility.

    The Petitioner has also failed to argue the
necessity or the probative value of such an evaluation in
light of the fact that the trial court conducted an in-
camera hearing with A.A. and C.T. and determined they
were competent for purposes of testifying at trial.
(Resp't Ex. 8 at 7; Resp't Ex. 10 at 8.) [FN 16 - The
State's psychological expert Colleen Laskoskie [sic;
Laskoski], who testified at trial, was also available for
cross-examination by the defense on the competency of []
A.A. and C.T.] Absent contrary indications, there was no
need to have the children evaluated after the trial court
determined their competency.

(# 10 at 40).

On this issue, the state habeas court found as follows:

> The competency of [A.A.] and [C.T.] was never reasonably questioned.  Therefore, a psychological or psychiatric examination was not appropriate in this case and at the November trial the girls first testified in camera and satisfied the Court that they were competent to testify.  They then each testified in both jury trials and again in the habeas corpus proceedings.  Their in court, under oath testimony has remained consistent.  It was not ineffective assistance of counsel not to request a psychological/psychiatric examination of the girls.

(# 9, Ex. 8 at 7).

An in camera hearing was conducted at which the two minor alleged victims testified.  Petitioner and Mr. McFarland were present at the in camera hearing, and Mr. McFarland adequately cross-examined the witnesses.  Based upon their in camera testimony, Judge Waters found that both of the girls were competent to testify before the jury.

It is not the province of this federal court to revisit the state trial court's determination of the competency of the witnesses who testified at Petitioner's trial.  That is a finding that is subject to the presumption of correctness under 28 U.S.C. § 2254(e)(1).  Petitioner has not offered any clear and convincing evidence to rebut the state court's finding that a psychological or psychiatric examination of the minor victims was not appropriate, and that the girls were competent to testify.

Likewise, Petitioner has not offered any basis for finding that his counsel's failure to move for a psychological and psychiatric evaluation of the alleged victims was objectively

99

unreasonable under the circumstances.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel was constitutionally ineffective based upon this claim. The undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

k.   Failure to object to prosecutor's closing argument.

Petitioner further alleges that "Defense counsel failed to object when the prosecuting attorney personally stated the Petitioner was guilty of the alleged offenses during arguments." (# 2, Appx. B at 27).  Petitioner further states:

> Ordinarily, this is the appropriate remedy for a defendant.  The objection must be made so that a curative or corrective instruction can be given to the jury.  The lack of action by counsel prevented this cure and allowed the State to vouch for their case and the testimony of A.A. and C.T.  This point was crucial because of the lack of corroborating evidence in this case.  This inaction also further demonstrates counsel's incompetence and lack of desire to adequately defend the Petitioner in this matter.  Given the length of the Petitioner's sentence of sixteen to forty years in a state penitentiary, the prejudicial effect of this inaction was enormous.

(Id.)

Respondent asserts that Petitioner has not adequately demonstrated that the prosecutor made any prejudicial comments, and

that "Petitioner may not merely speculate about potential prejudice but 'must affirmatively prove' that the result of the proceedings would have [been] different but for the deficient performance of his trial counsel." (# 10 at 41-42).

The state habeas court found as follows on this issue:

> The trial counsel's failure to object during the State's closing argument does not constitute ineffective assistance of counsel. As noted under Ground Eight, the Court instructs the jury as to the nature and weight to be given to closing arguments. The Prosecuting Attorney's comments did not unfairly prejudice the Petitioner or create manifest injustice.

(# 9, Ex. 8 at 8).

As noted previously herein, in order to be constitutionally improper, a prosecutor's remarks must so infect the trial with unfairness, that the resulting conviction is a denial of due process. Darden v. Wainwright, 477 U.S. 168 (1986). This includes comments about the prosecutor's personal beliefs concerning the evidence. United States v. Moore, 710 F.2d 157, 160 (4th Cir. 1983). However, such an error may be corrected by a curative instruction. Id.

Petitioner has not identified any particular statements he believes to be prejudicial. He merely claims that the prosecutor stated that Petitioner was guilty of the crimes with which he was charged, and that his counsel did not object to such comments.[7]

_____

[7] The undersigned notes that, in the second trial, Mr. McFarland did object during the prosecutor's rebuttal argument concerning a comment the prosecutor made about prior cases he had

101

The undersigned has reviewed the transcripts of the closing arguments at both of Petitioner's sex offense trials and, as previously stated herein, finds that none of the comments made by the prosecutor in either of his closing arguments was so fundamentally unfair as to deny Petitioner due process.  At most, the prosecutor stated that "the evidence shows that it did happen and the evidence is well beyond reasonable."  (# 9, Ex. 10 at 466).  This is permissible argument.

Furthermore, even if any of the prosecutor's comments were improper, Judge Waters instructed the jury that the closing arguments of counsel were not evidence, and Petitioner has not established that he suffered any undue prejudice from any of the prosecutor's comments.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel was ineffective in failing to object to the prosecutor's closing argument.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

---

handled.  The objection was overruled.  (# 9, Ex. 11 at 358).

        l.   Failure to investigate witness bias and other instances of sexual abuse against victim.

Petitioner also alleges that Mr. McFarland was ineffective because he failed to investigate whether there was sufficient evidence of bias against him on the part of witnesses Jan Goodnight and Sheriff Darrell Null, and further failed to investigate whether the alleged victim, A.A., had been sexually abused by her uncle, Joe Goodnight.  Specifically, Petitioner states:

> Defense counsel did not adequately investigate the relationship between Jan Goodnight (with whom the Petitioner had a daughter born in 1980) and A.A., or whether A.A. may have been sexually abused by her uncle, Joe Goodnight. (Transcript Writ Hearing January 13, 2003 pp 146-148)  Further, counsel never investigated whether Jan Goodnight was biased against the Petitioner and had passed such bias onto A.A., including the fact that Ms. Goodnight had previously denied Petitioner visits with their daughter Amanda.  In this case, the failure to properly prepare and investigate this matter was extremely important.  It may have revealed a prejudice on the part of A.A. or that A.A. was unduly influenced to bring these charges.  This could have been crucial, in particular, in requesting a psychological examination of A.A., regarding who the Petitioner was convicted of First Degree Sexual Assault and First Degree Sexual Abuse. Further, it may have provided information about whether A.A. had brought false allegations against Joe Goodnight, which could have been presented to impeach the testimony of A.A.

> Defense counsel never investigated whether Sheriff Null may have been personally biased against the Petitioner as demonstrated by his failure to investigate domestic violence complaints by Monica Bailey (the Petitioner's fiancée at the time).  Counsel also failed to investigate whether Sheriff Null had made inappropriate sexual advances toward Monica Bailey during a time when Ms. Bailey and the Petitioner lived together. [Citation omitted].

(# 2, Appx. B at 27-28).

Concerning these claims of ineffective assistance of counsel, Respondent states:

> The Petitioner again claims that trial counsel was ineffective for failing to investigate. In this claim, the Petitioner argues that trial counsel was ineffective for failing to investigate whether or not the victim had been rendered biased against him by another State witness with whom the Petitioner had a past relationship and whether the victim had been abused by her uncle before the Petitioner was charged. The Petitioner further argues that trial counsel was ineffective for not investigating whether a law enforcement witness was biased against him. (Petition at 27.)
>
> Again the Petitioner fails to successfully demonstrate what the result of such an investigation would have revealed, and how it would have been used at trial to alter the outcome of the verdict. The Petitioner further fails to rationally argue how any of the evidence revealed by further investigation would have even been admissible.

(# 10 at 42). Thus, Respondent asserts that Petitioner's claims are "insufficiently pled and speculative." (Id. at 43).

On Petitioner's claims that Mr. McFarland failed to investigate whether Jan Goodnight had an improper influence over her daughter that led to A.A.'s bias against Petitioner, and further failed to investigate whether A.A. had been sexually abused by her uncle, or made false allegations to that effect, the state habeas court found as follows:

> There is no evidence that Jan Goodnight improperly influenced her daughter against the Petitioner. There is no evidence that Jan Goodnight had anything but a friendly relationship with the Petitioner. There is no evidence that the child [A.A.] may have been sexually abused by her uncle. There is no evidence that [A.A.] made false allegations of sexual abuse against anyone. Counsel was not ineffective in not investigating matters

104

that were not supported by any evidence. (# 9, Ex. 8 at 8). Concerning Petitioner's claim that Mr. McFarland failed to investigate Sheriff Null's potential bias against Petitioner, the state habeas court found as follows:

> Monica Bailey's allegations regarding Sheriff Null have so little probative value as to the guilt or innocence of the Petitioner that any alleged failure to investigate does not constitute ineffective assistance of counsel. Whether the alleged actions or inactions of the Sheriff, if true, constitutes bias is speculation.

(Id.)

An allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1991). Furthermore, the reasonableness of an investigation made by counsel must be evaluated under the totality of the circumstances facing the attorney. See Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991).

During Petitioner's trial, the jury was informed by multiple witnesses that Petitioner and his ex-girlfriend, Jan Goodnight, shared a daughter named Amanda. Ms. Goodnight is also A.A.'s mother through a subsequent relationship with another man. On direct examination, the prosecutor asked Ms. Goodnight about her relationship with Petitioner up until February 3, 1999. Ms. Goodnight stated:

105

> A.   In the beginning we dated.    Then after I got
>      pregnant, he went out west.   Okay.   After she was
>      born, after Amanda was born, we tried to work
>      things out and it didn't work, and -- which I, you,
>      know, I had bitter feelings then, but over the
>      years, they passed . . . .

(# 9, Ex. 10 at 124).

During Petitioner's direct examination at the first trial, Mr. McFarland attempted to develop evidence to the effect that, in 1998, following a reconciliation with Petitioner, Ms. Goodnight attempted to rekindle their romance, and that Petitioner had spurned her advances.  (# 9, Ex. 10 at 404-405).  At both trials, Ms. Goodnight denied that she expressed any desire to Petitioner about getting back together.  (# 9, Ex. 10 at 136; Ex. 11 at 116-117).

Petitioner now contends that Mr. McFarland should have investigated this matter further to determine whether Ms. Goodnight's alleged hard feelings toward Petitioner were an improper influence on A.A. in claiming that Petitioner had sexually abused her.  Petitioner attempted to further develop this claim during his state habeas corpus proceedings.  At a hearing held on January 13, 2003, Petitioner testified as follows:

> Q.   And what is your -- what was your relationship with
>      Jan Goodnight in 1997 and '98?
>
> A.   It was on the mend.
>
> Q.   From where?
>
> A.   When my daughter was born, I wouldn't marry her
>      because I didn't love her, and she held my daughter

106

away from me and my family for several years.  She
wrote my family very vicious letters.  Then
finally, I would guess about '93, she let me see my
daughter for about a year and then she sort of put
the brakes on that for a while.  Then I-- my
daughter got old enough that she insisted to see me
and so Jan let us see each other again.

    It was an infrequent thing up until the period
that I found out about this sexual abuse thing on
Amanda, and my wife and I went and talked to her
and realized how bad the situation was and got them
out of there and moved them into Elizabeth and
furnished them a car and things.  And we were,
well, I thought building a fair relationship, and
this continued on until my wife, Mandy, and I had
divorced.

Q.   When was that?

A.   About 1997.

Q.   And mending your relationship with Ms. Goodnight
then, did you get to know [A.A.]?

A.   Yes, sir.

Q.   And what was your relationship in terms of how
often did you visit and where?

A.   Well, I just seen her periodically when I was
seeing my daughter, and then whenever they moved
into a-- with us for just a few days and then into
a small house beside us for, like a couple of
months, she was around all the time.

    Then, while they was in Elizabeth, I had very
infrequent contact with her, and my daughter and I
moved over to Elizabeth on the outskirts here to
the trailer park where this alleged abuse happened
and Jan needed a babysitter and my daughter,
Alicia, she took the job of babysitting, so she was
around every evening and most all the weekends.
And--

                    * * *


                     107

Q.   Did something change again in your relationship with Ms. Goodnight?

A.   Yes, sir.

Q.   What was that?

A.   Shortly after I moved to Elizabeth, she spent a lot of time at my trailer, and that was when she asked about us making a reconciliation, because I was unattached and she was unattached then.  I pretty much shot that down.

                        *  *  *

Q.   Was it before or after your daughter had started babysitting for [A.A.]?

A.   It was during that time.

Q.   I understand from your testimony Ms. Goodnight made her romantic interest known, is that correct?

A.   Ye, sir.

Q.   And what was your response?

A.   No.

Q.   How did she react?

A.   She didn't take it well.  She became rude.  Mostly when she came, she would come and pick up [A.A.] and she smarted me off frequently, and it got to the point that our daughter, Amanda, had a talk with her about it.

THE COURT: Was this not covered at trial, the alleged hostility of Jan Goodnight?

MR. BAILEY: I don't think it was covered at trial by Mr. Nutter, and, of course, one of our complaints is that the testimony that Mr. Nutter should have been giving explaining the situation, he was not able to, was not elicited from Mr. McFarland.

(# 11, Ex. 13 at 149-152).

Although A.A. testified at this same habeas hearing, she was not asked about her knowledge of the relationship between her mother and Petitioner or whether her mother's alleged hard feelings towards Petitioner had any influence on her testimony at Petitioner's trials.  Furthermore, at Petitioner's trials, the defense sufficiently established that A.A. was angry at Petitioner for disciplining her while Alicia was babysitting her.  Thus, the jury had sufficient information upon which to form an opinion about A.A.'s potential bias against Petitioner and could judge the credibility of her testimony accordingly.

Concerning Sheriff Null's potential bias against Petitioner, the undersigned first notes that Sheriff Null only testified as a rebuttal witness at Petitioner's first sexual misconduct trial, and only about the issue of the volunteered statement Petitioner made to him following his arraignment.  Petitioner called Sheriff Null as a witness at his state habeas hearing to question him about alleged biases he may have had against Petitioner or those close to him.

The following colloquy occurred during the habeas hearing:

Q.   Do you know whether or not [A.A.] had ever raised any allegations of sexual abuse against yourself?

A.   Against myself?

Q.   Yes.

A.   No, sir.  That's the first I've heard of it.

Q.   Are you familiar with Monica Bailey?

A.    Yes, sir.

Q.    Let me back up real quick.  I'm sorry, I asked about [A.A.].  How about [C.T.]?  Did she ever raise any allegations against you?

A.    No, sir.

Q.    What capacity-- Going back to Monica Bailey, in what capacity do you know Ms. Bailey?

A.    Well, she was - let's see - Victor's sister, she took care of their kids some.  I think when I first met in magistrate-- the magistrate placed the kids with her or something to that effect.

Q.    Do you ever recall Monica Bailey asking you to investigate her ex-husband for harassment?

A.    Not specifically, sir, no.

Q.    Do you recall having a conversation with Monica Bailey about her ex-husband?

A.    Not as I recall.

Q.    Do you ever recall having a conversation with Monica Bailey sitting on her porch?

A.    Yes, when she was on-- lived over on River Road, I was there.  I don't remember if it was a complaint or serving papers or what, but I couldn't tell you what we talked about.

Q.    Do you ever recall asking Ms. Bailey if you could rub her shoulders and telling her she should relax?

A.    No.  I told her she ought to just relax.

Q.    But at that time, you didn't ask to rub her shoulders or anything like that?

A.    No, sir.

Q.    Do you recall whether, during this conversation, Ms. Bailey became upset and left?

A.    No, sir.

110

Q.    Do you recall whether or not, during this period of
      time, Ms. Bailey was dating Mr. Nutter or living
      with--

A.    I don't know, sir.

(# 11, Ex. 13 at 108-110).  The transcript further indicates that

Petitioner asked Sheriff Null the following questions:

Q.    Do you recall whether Trooper Henry ever spoke with
      you about Ms. Bailey being upset with you?

A.    Yes, I do.

Q.    Trooper Henry did speak with you?

A.    Yes.

Q.    What was the nature of that conversation?

A.    The nature of it was that he told me she had talked
      to him to make a complaint and decided not to.

Q.    Did he discuss what any specific charge may have
      been or what the nature of the complaint was?

A.    No, he never.

Q.    Did he ever ask you to apologize to Ms. Bailey?

A.    Do what, sir?

Q.    Did he ever ask you just to apologize to Ms.
      Bailey?

A.    No, he never.

Q.    Did he suggest any course of action you should take
      regarding Ms. Bailey?

A.    No, he never, nothing to take action for.

(Id. at 111-112).  Mr. Bailey also asked Sheriff Null if Mr.

McFarland or anyone on Petitioner's behalf had ever interviewed him

about these allegations by Monica Bailey, or the statement

Petitioner allegedly made to him.  He stated that no one had interviewed him.  (Id. at 112).

Petitioner has not established that any of this evidence would have altered the outcome of Petitioner's trials.  Based upon a thorough review of the entire record of proceedings that have been produced to this court, it appears that counsel conducted an adequate investigation under the circumstances, and there was no undue prejudice to Petitioner's defense by the failure of Mr. McFarland to do additional investigation or cross-examination on these issues.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel provided ineffective assistance based upon these allegations.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

m.   Failed to keep Petitioner informed about case.

Petitioner also makes a blanket allegation that Mr. McFarland failed to keep him informed about his case "by failing to provide copies of motions, orders and the pre-sentence investigation." Petitioner contends that "[t]his failure prevented the Petitioner

112

from being fully aware of the progress of his case, and from having the appropriate motions made, as discussed throughout this brief." (# 2, Appx. B at 28).   Petitioner further asserts that the result of this failure, and the fact that he could not make <u>pro</u> <u>se</u> motions, since he had court-appointed counsel, was that "motions were untimely made or not made at all."  (<u>Id.</u>)

Respondent asserts that this claim is "insufficiently pled, speculative and unsupported by the record."   (# 10 at 44). Respondent states that "Petitioner offers no supporting argument other than his self serving assertions" and "[i]t is unclear just what motions were not made and what effect these motions would have had on the outcome of the trial."  (<u>Id.</u>)

The state habeas court found as follows on this issue:

> The Petitioner was present at all pre-trial hearings and was aware of the progress of his case.   The Petitioner's counsel handled the case in a competent manner.  He secured an acquittal of attempted murder and malicious assault charges in his first trial.   In the second trial his counsel secured a hung-jury on the most serious charge.  At sentencing, it was acknowledged that Petitioner's counsel had reviewed the pre-sentence investigation report with the Petitioner.  Mr. McFarland did not provide ineffective assistance of counsel.

(# 9, Ex. 8 at 8).

Petitioner's reliance on discussions "throughout this brief" as support for this claim is wholly insufficient to support habeas corpus relief.  As stated previously herein, "Judges are not like pigs, hunting for truffles buried in briefs.'"  <u>de la O v. Housing Authority of City of El Paso</u>, 417 F.3d 495, 501 (5th Cir.

2005)(citing <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991).

The evidence demonstrates that Mr. McFarland did review Petitioner's pre-sentence investigation report with him before his sentencing hearing.  Otherwise, Petitioner has not identified specific motions that he believes should have been made, or other documents or things that he claims he was not provided, and how the failure to receive such documents affected the outcome of his trial.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel provided ineffective assistance based upon these allegations.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

> n. Moved for change of venue over Petitioner's objection.

Petitioner further alleges that his counsel moved to change the venue of his re-trial on Count Four, the sexual assault charge, even though Petitioner objected to the change of venue.  Petitioner states:

114

Defense counsel moved for a change of venue for Trial 2 even though the Petitioner personally objected to a change of venue.  Defense counsel was well aware of the wishes of the Petitioner to be tried in Wirt County, West Virginia.  The Petitioner had previously been acquitted of Malicious Assault and Attempted Murder in this county.  Also, the first jury had failed to convict the Petitioner of First Degree Sexual Assault, and quite probably would not have convicted at a retrial when the lesser included offense instruction was given.  He was a resident of Wirt County and believed he could and would receive a fair trial in Wirt County.  (Transcript Writ Hearing January 13, 2003 pp 130-131).

(# 2, Appx. B at 28).

Respondent addresses this issue as follows:

Following [between?] the First Trial and the re-trial on the remaining charge, trial counsel moved for and was granted a change of venue.  At the hearing, on the motion to change venue after the First Trial, trial counsel stated: "I have discussed with Mr. Nutter the propriety of changing venue . . . and we would move the Court to change the venue." (Resp't Ex. 12 at 3.)  The Petitioner was present at the hearing and raised no objection.

There was no unreasonableness in trial counsel's actions where he acted in accordance with the Petitioner.  Nor can resulting prejudice be demonstrated because there is no way to argue that trial in another county was prejudicial.

(# 10 at 43-44).

Concerning this issue, the state habeas court found:

The Petitioner, by counsel, moved for a change of venue on December 13, 1999.  The Petitioner was personally present when the issue was discussed.  The Petitioner, in open court, (transcript, December 13, 1999) never raised any objection to the change of venue before trial, during the trial, or during post-trial motions.

(# 9, Ex. 8 at 9).

As noted previously herein, on December 13, 1999, at a status hearing that occurred between Petitioner's first and second trials on the sexual assault charge, Mr. McFarland made the following representations and oral motion to change venue:

> In regards to the pending count, which was hung, which Mr. Davitian and I -- and I have discussed with Mr. Nutter the propriety of changing venue in regards to that, and we would move the Court to change the venue to Doddridge County, West Virginia, a county similar in demography, size, similar in the fact that they are both rural counties, rather than Wirt County because, as you are aware -- and which I became aware after we had chosen our jury in this case -- apparently there was a prosecution involving a man named <u>Wooten</u>, who is going to be sentenced here today, that involved a large number of junior high school and high school victims, an inordinate number.  And I don't have -- am not privy to the number.  All I know is what is of public record, but I don't think that Mr. Nutter can get a fair trial in Wirt County, given that extraordinary prosecution that happened with Wooten.  I think that the entire jury pool would be prejudiced against any person charged with a sex crime in this county, at this time, because of the recency and the extraordinary nature of the Wooten charges and the types of victims it affected.
>
> * * *
>
> And we had a difficult time choosing the jury in the last case, if you will remember.  We called an extraordinary number, twice as many as you normally would, and we got awful close to not having enough.

(# 11, Ex. 12 at 4-5).  The prosecutor, Mr. Davitian, added, "I believe that a change of venue would be beneficial to the State as well so we don't have any objection to that."   (<u>Id.</u> at 5).  Petitioner, himself, did not voice any objection to the motion at that time.

116

Petitioner did not offer any testimony or sworn evidence from Mr. McFarland during his habeas proceedings.  Thus, there is no evidence concerning Mr. McFarland's knowledge of Petitioner's wishes, other than Petitioner's own testimony.

During the omnibus hearing held on January 13, 2003, Mr. Davitian testified as follows on the change of venue issue:

> A.   * * * And then the third trial – stop me if I'm going too far – but the third trial we tried in Doddridge County on a Defense change of venue motion, and it was the remaining count, the one that the jury had hung on.
>
> Q.   And you say it was the Defendant's motion to change venue?
>
> A.   Yes, it was.
>
> Q.   It was not a State motion?
>
> A.   No, it wasn't.  The State cannot move to change venue, Reggie.

(# 11, Ex. 13 at 15-16).[8]  Petitioner testified as follows at the same hearing:

> Q.   Since you bring it up, do you recall requesting Mr. McFarland to change venue?
>
> A.   No, I wanted to stay in Wirt County, because I'd been acquitted of attempted murder and malicious wounding.  I had been convicted on sexual abuse, but I was also hung on the sexual assault.  We were hung like three-and-a-half to four days.  In an hour's time, I believe as far as a jury is

_____

[8]  No written motion to change venue was ever filed.  At some point in the proceedings, Mr. McFarland made a statement that he thought that Mr. Davitian was going to file a written motion to change venue.  This appears to be what led to the confusion about who made the motion.

117

concerned, I had a very fair jury.  The people knew
me here, knew my reputation.  They knew the
reputation of [C.T.] and [A.A.].  There's nobody
can judge a situation like people that gets there
and lives the situation and I felt more comfortable
here, but Mr. McFarland wanted to go to Doddridge
County, and after two or three times with him
talking to me, I decided, well, he's the lawyer and
knows what he's doing, so let's go for it, so I
agreed.

(Id. at 130-131).

At the omnibus hearing held on February 21, 2006, Petitioner

further testified about this issue as follows:

Q.   Did you agree to a change of venue?

A.   No, I did not.

Q.   Did Mr. McFarland ever talk to you about the change
     of venue prior to its being granted?

A.   Yes, like three or four times.

Q.   What did he tell you about it?

A.   He kept pushing me for it and I kept saying no.
     The last time, I said maybe.

Q.   The last time what?

A.   I said maybe, but I was never instructed before the
     Court or explained to me.  I was just brought up
     here and it was done.

Q.   Did the Court ever ask you if you were interested
     in a change of venue?

A.   No, they never.

Q.   Were you ever given the opportunity to speak at the
     change of venue hearing?

A.   No sir, I wasn't.

Q.    What's your understanding concerning the reason given for the change of venue?

A.    There was one sex crime that was claimed before the Court and that was the State vs. Wooten, which was a plea bargain.  It did not go to trial and it was not publicized in the newspaper and they said that they felt that prejudiced me in getting a jury pool.

Q.    When you say "they," who's the "they"?

A.    The State and my Defense, which is totally improper and not according to the Trial Court Rules for change of venue.

Q.    Do you feel that you could have received a fair trial here in Wirt County?

A.    Yes, I do.

Q.    What's your understanding as to which party is allowed to or entitled to file a motion for change of venue?

A.    Article 3, West Virginia Constitution, clearly states that only the Defense has the right to make such a motion for change of venue.  And three times on record, the Prosecutor made a verbal motion for change of venue, and nowhere on record did the Defense ever make a change of venue motion.  And there's no written motion by anyone at the change of venue hearing.  Page 7, the transcripts reveal that my Defense counsel stood up and said, "Your Honor, I thought Mr. Davitian was going to prepare and file that."

Q.    Meaning the motion for change of venue?

A.    Yes, sir.

Q.    So, it's your opinion based on that statement that Mr. McFarland believed that the State could and was going to file that motion?

A.    No, sir.  I believe that he was working in tandem with Ted Davitian to convict me, because Ted needed the publicity to get re-elected as the Prosecutor

119

> against Ms. Maze, who's a hometown girl here.  That
> was the reason that it was agreed among them for
> the change of venue and it's the reason that there
> is such a huge difference in his performance as a
> Defense attorney in Doddridge County.  He basically
> threw in the towel.

(# 11, Ex. 17 at 11-13).

Petitioner's representation that his counsel did not move for a change of venue is inaccurate as demonstrated by the trial record.  Furthermore, Petitioner's arguments that the attorneys and the trial court used improper procedure for the change of venue is solely a matter of state law.  Thus, the only issue before this court is whether Mr. McFarland's motion to change the venue of the second trial, allegedly over the objection of the Petitioner himself, constitutes ineffective assistance of counsel.

Even if Petitioner could demonstrate that Mr. McFarland's conduct in moving for a change of venue fell below an objective standard of reasonableness, Petitioner has not demonstrated that he was unduly prejudiced by that action.  Petitioner cannot credibly assert that he would have been acquitted of first degree sexual assault, had his trial occurred in Wirt County.  Such a contention is entirely speculative, and cannot serve as a basis for a claim of ineffective assistance of counsel.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel provided ineffective assistance based upon these allegations.  Therefore, the undersigned further proposes that the

120

presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

> o.   Insufficient questioning of Petitioner at trial.

Petitioner also alleges that his counsel "did an unacceptable job of eliciting testimony from the Petitioner, asking very few questions, even though the Petitioner wished to testify about all matters regarding his trial." (# 2, Appx. B at 28). Petitioner further states:

> This was especially true at the second trial where counsel asked only a very few questions concerning his guilt or innocence. (Transcript March 27, 28, 2000, Trial pp 309-310) This sent the message to the jury that counsel believed the Petitioner was lying, guilty, or both, because counsel was unwilling to adequately participate in the most important aspect of the Petitioner's defense. The Petitioner cannot overemphasize that he has never admitted any part of the allegations for which he was convicted, not even privately to his trial counsel.

(Id.)

> Respondent addressed this claim as follows:

> At the First Trial, the trial counsel questioned the Petitioner in detail about his version of events. (Resp't Ex. 10 at 397-406.) At the Second Trial, trial counsel's questioning was limited to a few yes and no questions. (Resp't Ex. 11 at 309-10.)

> The decision by trial counsel to limit direct examination of the Petitioner at the Second Trial was a clear matter of trial strategy. The more trial counsel questioned the Petitioner, the more doors he opened for

121

the prosecution. Moreover, it was trial counsel who was
in the position to observe the Petitioner's presence,
appearance and demeanor before the jury - something
impossible to do from the record and not subject to
second guessing. See Martinez v. Quarterman, 2007 WL
685964 *5 (5th Cir. 2007)("To fault counsel for not
asking these particular questions is to engage in the
kind of hindsight second-guessing that Strickland warned
against."); Bunch v. Thompson, 949 F.2d 1354, 1364 (4th
Cir. 1991)("The best course for a federal habeas court is
to credit plausible strategic judgments in the trial of
a state case[.]") Further, the change between the level
of questioning by trial counsel of the Petitioner at the
First Trial and Second Trial would indicate a change in
trial strategy arrived at after consultation between the
Petitioner and trial counsel. If the Petitioner had
wished to testify more extensively, it was his
responsibility to inform trial counsel of such. "The
reasonableness of counsel's actions may be determined or
substantially influenced by the defendant's own
statements or actions." Strickland[, 466 U.S.] at 691.

The Petitioner has failed to demonstrate that trial
counsel's strategic decision fell below a reasonable
standard. The Petitioner also fails to argue how further
examination by trial counsel would have positively
effected the outcome of the trial, particularly in light
of the latitude it would have given the prosecution.

(# 10 at 45-46).

The state habeas court found as follows on this issue:

The Petitioner's counsel gave the Defendant adequate
opportunity to deny the charges against him on the
witness stand and gave him the opportunity to say
whatever he wanted to say to the jury. The "open-ended"
questions did not imply guilt in any way whatsoever.
Petitioner's trial counsel was not ineffective in
handling of the direct testimony of the Petitioner.

(# 9, Ex. 8 at 9).

Petitioner has not offered any specific questions that he

believes Mr. McFarland should have asked him at his second trial,

or demonstrated how the failure to ask such questions prejudiced

122

his defense.  The limitation of Petitioner's direct examination to certain "yes" or "no" questions about the specific elements of the crime with which he was charged limited the prosecutor's ability to cross-examine Petitioner.  This is sound trial strategy that cannot be re-visited by a federal habeas court.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel provided ineffective assistance based upon these allegations.  Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

p.   Improper cross-examination of victims.

Petitioner further alleges that:

Defense counsel failed to exercise the requisite degree of skill in questioning A.A. and C.T., and caused A.A. to cry on the stand during the second trial by haranguing the witness.  Counsel also failed to effectively impeach both witnesses through their prior inconsistent statements, particularly at the second trial.  The impact on a jury of seeing an alleged victim cry on the stand cannot be overstated.  The Petitioner attempted to interject for a recess or change in questioning, but was prohibited from doing so by the Trial Court.

(# 2, Appx. B at 29).

Respondent contends that, in some of Petitioner's claims in his petition, he is alleging that Mr. McFarland was not aggressive enough, whereas here, he is claiming that Mr. McFarland was too aggressive in questioning the victim.   (# 10 at 46 n. 17). Respondent further states:

> Trial counsel had no control over an outburst by the victim during testimony.   This claim cannot form the basis of a claim for ineffective assistance of counsel under any analysis.   Likewise, resulting prejudice as required to prevail under Strickland would be impossible to prove absent extreme circumstances.   As with the vast majority of the Petitioner's claims, this is purely speculative and shows no deficiency in counsel's performance or resulting prejudice.   Deficient performance results in prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.   No such probability exists here.

(Id. at 46-47).

The state habeas court found as follows on this claim:

> Cross-examination of a child witness is always difficult.   Mr. McFarland was not ineffective in the manner in which he cross-examined the child witnesses. The fact that [A.A.] began crying does not mean Mr. McFarland provided ineffective assistance of counsel.   It was not proper for the Petitioner to interrupt the cross-examination.   The Petitioner takes inconsistent position that Mr. McFarland was too vigorous in his cross-examination or not vigorous enough.

(# 9, Ex. 8 at 10).

The manner in which Mr. McFarland cross-examined A.A. is a matter of trial strategy.   Nevertheless, the undersigned has reviewed the cross-examination of A.A. in both of Petitioner's trials and finds nothing inappropriate in the manner of the cross-

examination.   Furthermore, Petitioner has not identified any specific prior inconsistent statements that he believes should have been used in the cross-examination of A.A. and C.T., or how the introduction of such evidence would have altered the outcome of his trial.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel provided ineffective assistance based upon these allegations.   Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions denying habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

q.   Ground Eleven - ineffective assistance of counsel at sentencing hearing.

In Ground Eleven of his federal petition, Petitioner alleges that he was denied the effective assistance of counsel at sentencing.  (# 2, Appx. B at 30).  Petitioner states:

> The Petitioner did not have ample opportunity to review his pre-sentence report prior to his sentencing hearing, and his trial counsel had another, ill[-] prepared attorney appear for him at the sentencing hearing. (Transcript Writ Hearing February 21, 2006 pp 26-27) At that time the Petitioner requested [] that new counsel be appointed which was denied by the court.  This set of circumstances all served to abrogate his right to effective counsel at this crucial stage.

(Id.)

Respondent contends that Petitioner fails to specifically state how counsel was ineffective and how he was prejudiced thereby. (# 10 at 50). Respondent further states:

> Neither the Supreme Court nor the Fourth Circuit have issued a standard for the prejudice prong of a claim of ineffective assistance of counsel at sentencing for non-capital cases but there is some guidance from sister circuits:

> Strickland expressly left open the question of the proper standard for claims of ineffective assistance at noncapital sentencing proceedings. Id. at 2064. This Court has held that in the noncapital sentencing context, prejudice requires a showing of a reasonable probability that, absent counsel's unprofessional errors, the noncapital sentence would have been "significantly less harsh." Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993)(emphasis in original). See also United States v. Stewart, 207 F.3d 750, 751 (5th Cir. 2000)(same); Durrive v. United States, 4 F.3d 548, 551 (7th Cir. 1993)(quoting with approval this portion of Spriggs); Martin v. United States, 109 F.3d 1177, 1178 (7th Cir. 1996)(must show "counsel's deficient performance led to a 'significant' increase in sentence"). In Glover v. United States, 531 U.S. 198, 121 S. Ct. 696, 148 L. Ed.2d 604 (2001), the Supreme Court arguably cast doubt on the Spriggs "significantly less harsh" rule and may have impliedly rejected it in total.

Daniel v. Cockerell, 283 F.3d 697 (5th Cir. 2002). (Id.)

Respondent further contends that Judge Waters cited to Petitioner's "poor psychological report, his poor outlook for rehabilitation, and his criminal history" as grounds for Petitioner's sentence. (Id. at 51). Respondent further states that "Petitioner fails to articulate how more competent representation would have overcome his criminal history and the diagnosis by psychiatric professionals sufficient to secure a

lessor or alternative sentence." (Id.)

The state habeas court found as follows on this claim:

The Petitioner stated at sentencing that he had reviewed the pre-sentence report with his trial counsel, Mr. McFarland, approximately one week prior to sentencing. The Petitioner was not denied his right to review the pre-sentence report. Mr. Radcliff substituted as counsel for the Petitioner at [t]he sentencing hearing. The Petitioner did not object and did not request new counsel until after the hearing.

(# 9, Ex. 8 at 11).

The undersigned previously addressed Petitioner's claim that his sentences were excessive and that the court improperly considered his failure to admit to the crimes in denying Petitioner's request for probation or alternative sentencing, and the undersigned proposed that the presiding District Judge find that those claims lack merit.

Petitioner's sentences are set by statute. Barring an alternative sentence, which was denied, despite competent argument by counsel at the sentencing hearing, Petitioner was limited to the sentences that were imposed, and there was no "significantly less harsh" sentence that could have been imposed. Petitioner has not presented any specific evidence or argument that he believes his counsel should have introduced at sentencing that would have altered the judge's decision not to sentence him to probation.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has not demonstrated that his counsel provided ineffective assistance at Petitioner's sentencing.

127

Thus, the undersigned further proposes that the presiding District Judge **FIND** that the states courts' decisions denying Petitioner habeas corpus relief on this claim were neither contrary to, nor an unreasonable application of, clearly established federal law, and that Respondent is entitled to judgment as a matter of law on this claim.

The undersigned has conducted an exhaustive review of the trial transcript and other records presented to this court.  Based upon that review, and a review of all of the claims of ineffective assistance of counsel as pled in Petitioner's federal petition, the undersigned proposes that the presiding District Judge **FIND** that Petitioner has failed to demonstrate that the conduct of his counsel was objectively unreasonable, or that there is any reasonable probability that, but for counsel's conduct, the outcome of his trial would have been different.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state habeas courts' rulings denying Petitioner habeas corpus relief on each of Petitioner's claims of ineffective assistance of counsel were neither contrary to, nor an unreasonable application of, clearly-established federal law, and that Respondent is entitled to judgment as a matter of law on all of Petitioner's claims of ineffective assistance of counsel.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (# 9) as to all of the grounds for relief stated in Petitioner's section 2254 petition.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

129

1984).  Copies of such objections shall be served on the opposing party, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and counsel of record.

_____February 5, 2008_____           _Mary E. Stanley_____
            Date                          Mary E. Stanley
                                          United States Magistrate Judge

130